THE NEW YORK, HOUSATONIC AND NORTHERN RAILROAD COMPANY vs. THE BOSTON, HARTFORD AND ERIE RAILROAD COMPANY.

There is properly no such thing as an extinction of the right of eminent domain. All kinds of property are subject to it, as well that which is already held under it as that which is not.

A railroad company may be authorized by the legislature to so locate its route as to take land already appropriated, under a previous and equal authority, by another railroad company.

In the location of such second road no unnecessary damage should be done to the first road nor to the public, and where the location is to be approved by commissioners the question is one that addresses itself to their judgment and the whole matter is within their jurisdiction.

Where a statute provided that in case any railroad company should not, within twelve months after the acceptance of its route by the commissioners, procure and pay for the right of way over all land covered by the location, such accept-

N. York, Housatonic & Northern R. R. Co. v. Boston, Hartford & Erie R. R. Co.

ance by the commissioners should be void, it was held that such failure to pro-
cure and pay for the right of way was not in the nature of a forfeiture, to be
taken advantage of only by the state in a direct proceeding against the com-
pany, but that the whole proceeding became of no effect upon the expiration
of the twelve months.

Where a location of a road had been accepted by the commissioners before the
passage of the above statute and the statute was prospective only in its terms,
it was held that the case came within the spirit of the statute, and that on the
failure of the company to secure and pay for the land covered by their route
within twelve months after the passage of the act, their right to the land was
gone.

Where on a motion to dissolve a temporary injunction, the Superior Court found
the facts and reserved the case for the advice of this court, the court declined
to entertain the case until the parties had entered into a written stipulation
to accept the decision of the court as final and not require a further hearing on
the petition for a permanent injunction.

APPLICATION to the Superior Court in New Haven county
for the dissolution of a temporary injunction granted by the
court against the respondents. The court found the facts,
and at the request of both parties reserved the case for the
advice of this court. The facts are complicated and difficult
of statement without the map used upon the trial, and it is
believed that all the points decided by the court will be suf-
ficiently understood from the opinion.

When the case came up for argument in this court the
judges declined to hear it, as the decision would not be final,
and consented to do so only upon the parties entering into a
written stipulation to accept their decision as final and not
to ask for a further hearing upon the petition for a perma-
nent injunction.

*H. B. Harrison* and *Doolittle*, for the New York, Housa-
tonic and Northern Railroad Company.

*T. E. Graves* and *J. Halsey*, with whom was *G. W. Phillips*,
for the Boston, Hartford and Erie Railroad Company.

CARPENTER, J. The petitioners duly located their railroad
through the town of Danbury, which location was approved
by the railroad commissioners on the 17th day of April, 1866.
In the written approval signed by the commissioners reference

was had to an agreement between the parties, in which it was stipulated that the respondents should be at liberty to locate their road upon a part of the land so taken by the petitioners, paying therefor just damages; and further, that the railroads should cross each other but once, and run as near each other as practicable, and at the same grade. Thereupon the petitioners acquired title to a part of the lands so taken, and constructed their road as far west as the site selected for a depot.

They graded for a double track, intending however to lay a single track only for the present, leaving the southerly and easterly side of the road bed for the second track whenever the business of the road should require it. That part of the road is embraced in the respondents' location. The legality of their lay-out in this respect is the first question for our consideration.

1. It is to be observed that the respondents do not take the petitioners' franchise; they simply propose to run their track over land already taken for railroad purposes by the petitioners, but in such a manner as not to interfere with the petitioners' track as now used, except at the crossing, which is not objected to, and not to subject them to any considerable inconvenience, unless and until a double track is required for the business of the road. The question then is not whether the respondents have power under their charter to take the petitioners' road for their own use and practically destroy their franchise, but whether any part of the land once taken by the petitioners as a site for a railroad, and which is not required for present use, may be again taken by the respondents for similar purposes.

It will hardly be claimed that the taking of property by the exercise of the right of eminent domain is an exhaustion of the right in respect to that property. Strictly speaking there is no such thing as an extinction of the right of eminent domain. If the public good requires it all kinds of property are alike subject to it, as well that which is held under it as that which is not. Even contracts and legislative grants, which are beyond the reach of ordinary legislation, are not exempt.

SEPTEMBER TERM, 1869. 199

N. York, Housatonic & Northern R. R. Co. *v.* Boston, Hartford & Erie R. R. Co.

*West River Bridge Co.* v. *Dix,* 6 How., 507; *Richmond & Fredericksburg R. R. Co.* v. *Louisa R. R. Co.,* 13 How., 71; *Enfield Toll Bridge Co.* v. *Hartford & New Haven R. R. Co.,* 17 Conn., 454.

But the power of the legislature in the premises is substantially conceded. It is insisted however that that power has not been delegated to the respondents. It must be conceded, I think, that the respondents are not authorized to take the petitioners' franchise. The charters of both corporations exist and are in full force at the same time. The legislature intended to authorize the construction of both roads. It cannot be presumed therefore that it was intended that either should have power practically to destroy the other. But it does not follow that the lay-outs of the two roads may not, to some extent, cover the same ground. There is nothing in the charter of either company which prohibits this. On the contrary the charter of the New York & Hartford Railroad Company, (4 Private Acts, p. 1016,) the powers granted by which are now vested in the respondents, expressly authorizes the company, whenever necessary to intersect or cross any other railroad, to build their own road " across or upon " the same, upon restoring it to its former state or in sufficient manner not to impair its usefulness. And again, in the same section, " Provided further that said New York & Hartford Railroad Company in constructing their said railroad across or upon any other railroad or canal, shall not change or in any wise alter either the grade or line of the same, nor in any way enter upon, use or cross such railroad or canal, without first paying to said railroad or canal company such portions of the expense of constructing so much of said road or canal as shall be required by said New York & Hartford Company, and also such damages as said railroad or canal company may sustain by reason of the construction of said New York & Hartford railroad in manner aforesaid, to be ascertained in all respects in the same manner as is provided by the seventh section of this act." The same provision is not, in terms, contained in the petitioners' charter, nor in the public act relating to railroads; but I apprehend nevertheless that their rights are

the same.   The general statute authorizing lands to be taken for railroads contains no restriction in respect to ownership or use.   Neither company then has any predominant right over the other.   Each one, under its charter and the laws of this state, is authorized to locate its railroad, subject to the approval of the commissioners, upon the most feasible route.   In doing so they should · do no unnecessary damage to each other nor to the public.   Neither ought to be permitted so to locate its own road as materially to impair the efficiency or usefulness of the other.   Now it does not seem to us that any of these principles have been violated in this case.   The inconvenience experienced by the petitioners, so long as they use a single track only, is slight.   The grading for a second track appropriated by the respondents must be paid for.   When the time comes, if it ever does, that a second track is required, the parties may arrange to run their trains over the same track, as is done by other railroads in this state, or the petitioners may extend their grade upon the other side so as to lay an independent track.   So far as the finding shows either course is feasible.   It is true either course would be attended with inconvenience and considerable expense, and possibly further legislation might be required.   But all these circumstances are to be taken into consideration in estimating damages, and it must be presumed that the commissioners considered them and gave them their due weight when they approved the respondents' location.   All these matters are peculiarly within the province of the commissioners, and as we are unable to see that the petitioners will sustain any injury that will interfere with the practical operation of their road, we cannot say that the commissioners have done wrong.

But other considerations are involved here which ought not to be overlooked.   The public have an interest in the location of railroads running near each other ·as these do.   An unreasonable quantity of land should not be taken for railroad purposes.   Therefore, when practicable, the tracks should lie side by side.   If the respondents should be compelled to go outside of the petitioners' location, as claimed, nearly double the quantity of land now required would be necessary.

Another consequence would be that the land owners and the public having occasion to cross the railroad, would have two to cross within a short distance of each other instead of one. The interests of the public then would be promoted by requiring these roads to run near each other and at the same grade. If we add to this the fact that in this way the two roads can be much more economically constructed and maintained, it is apparent that the interests of all concerned, the railroad companies, the land owners and the public, concur. The court below has found that at one time the parties agreed " that wherever the railroads of said two companies should run through Danbury they ought to run close together, so as to cause as little inconvenience as possible to the people of Danbury." And the agreement made by the parties states that " it has been deemed advisable that, so far as practicable, said roads should be located near each other, and, as nearly as practicable, at the same grade," &c.

Thus it would seem that the present location carries out the views once entertained by the parties themselves; and if it is not now in accordance with the wishes of the petitioners, still, as the railroad commissioners, in view of all the circumstances, have approved the location, we see no occasion for a court of equity to interfere. Indeed the power of the court to interfere, so long as the commissioners act within the scope of their authority, must be denied. For the reasons already suggested we do not think they have exceeded their powers so far as this part of the case is concerned.

2. The objection to the respondents' lay-out west of the depot is of a different character. It does not follow the line of the petitioners' lay-out, but crosses it four times in the space of about one mile. This, it is claimed, practically destroys that part of the petitioners' road, or at least seriously impairs its usefulness. If there was nothing else in the case it would be difficult to vindicate this proceeding. The court below has found that the commissioners approved this part of the location upon the supposition that the petitioners had no valid location where the crossings are. Otherwise their action would have been different. It appears that the peti-

tioners' location was approved in April, 1866.  At the time
of the trial, nearly four years later, they had acquired neither
title to, nor a right of way over, any part of their location
west of the depot, about two miles, except three small sepa-
rate tracts of land, as appears from the map which is made
a part of the finding.  A part of that distance, including one
crossing, is within the limits of the borough of Danbury.  In
respect to that part the respondents insist that the petitioners
have lost their location by virtue of the 3d section of the act
extending the time for the petitioners to complete their road,
(Private Acts of 1868, p. 381,) which is as follows: "If said
corporation shall not, within twelve months from the rising
of this General Assembly, procure and pay for its right of
way over all lands in the borough of Danbury upon which
said road has been, or shall be, with the written approbation
of the railroad commissioners, located, or make with all
parties owning said lands arrangements to the acceptance
and satisfaction of said parties, for the taking and using by
said corporation of said right of way across said lands, then
the said written approbation heretofore or hereafter to be
given by said commissioners to the location of said railroad
within said twelvemonth, upon and over said lands, shall be
void."

In regard to the remainder of the lay-out, lying outside the
limits of the borough, the respondents insist that the same
has become void by virtue of the statute of 1867, p. 98, which
provides that " when the survey of any railroad company shall
have been accepted by the railroad commissioners, said com-
pany shall procure and pay for the right of way of all lands
through which they may pass, within twelve months, or make
satisfactory arrangements with the parties owning said lands,
or said acceptance by said commissioners shall be void."  We
think the respondents are right in both claims.  So far as
the resolution of 1868 is concerned, the case is within its
letter, and is too clear for argument, unless there is force in
the petitioners' objection, that it is in the nature of a for-
feiture, and the neglect or omission of the company can be
taken advantage of only in a direct proceeding against the

company in behalf of the state, for the purpose of procuring a judgment of forfeiture. But we think this position is not tenable. The public act of 1867 seems to cover the whole ground. Why the substance of it should be embodied in the private act of 1868 is not readily perceived. Perhaps it was upon the supposition that the act of 1867 did not apply to surveys approved before the passage of the act, a subject we shall presently consider. Be this as it may, both acts relate to the same subject-matter, have the same end in view, and should receive the same interpretation. The principal, and perhaps the only, object which the legislature had in view, was to prevent such surveys from being a cloud upon the title to real estate an unreasonable length of time. We shall give effect to that intention best by holding that the statute is operative and effectual, at the instance of the owner of the land, the party directly interested, and for whose protection the statute was passed, independent of any action by the state. Any other construction would impair the effect of the statute, and might in some cases defeat the legislative intent altogether.

If we are right in this, the public statute must be decisive of the case, unless, as before intimated, it is inapplicable to it for the reason that the petitioners' location was approved before the passage of the act. This case is not within the letter of the act, as that applies only to subsequent cases. When the act took effect more than twelve months had elapsed since the approval by the commissioners. Hence a literal application of the statute to this case would destroy the validity of the approval at once. Such a result could not have been intended. On the other hand, more than twelve months had elapsed from the passage of the act when the respondents' location was approved. No good reason can be suggested why the petitioners should have an indefinite length of time after the passage of the act in which to procure a right of way, while other companies, whose surveys were subsequently approved, should have only twelve months. The evils existing in the one case are as great as in the other. The case then is brought within the spirit of the act, and, it

being a remedial statute, we think it our duty so to construe it as to apply the remedy and suppress the mischief.

The petitioners further claim that the respondents are estopped by their agreement from claiming any portion of the land embraced in the petitioners' location, for the reason that the petitioners upon the faith of it have incurred expense in grading for a second track, and in acquiring title to a small quantity of land west of the depot. We do not think the case is one for the application of the doctrine of estoppel. So far as the easterly portion of the road is concerned, the agreement itself seems to contemplate that both roads shall run close together; but if not, all the expense incurred by way of grading for a second track can be fully compensated in damages; and in respect to the land purchased in the westerly portion, the cost must be trifling compared with the sum of $64,000, which the court has found will be saved to the respondents by following their survey rather than that of the petitioners, a portion of which, certainly, may be made available to the petitioners if they construct their road alongside the location of the respondents. But aside from this, the agreement contemplates that the petitioners should construct their road within a reasonable time. They having failed to do so for more than three years, and until the respondents were ready to construct their road, they virtually failed to comply with the agreement on their part, and are not in a condition to complain of its violation in this respect by the other party.

Our advice to the Superior Court is that the injunction be dissolved.

In this opinion the other judges concurred.