THE HARTFORD AND CONNECTICUT WESTERN RAILROAD
COMPANY *vs.* CHARLES C. MONTAGUE.

First Judicial District, Hartford, March Term, 1900. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The two years' limitation for bringing condemnation proceedings under
General Statutes, § 3439, applies to railroad companies acting under
special charters as well as to those organized under the general
railroad law, in the absence of any charter provision to the con-
trary.

Advantage may be taken in condemnation proceedings of the statute of
limitations upon demurrer, if the application shows that by lapse
of time the plaintiff's claim cannot, under any circumstances, be
maintained.

A general authority from the legislature to revise the public statutes
implies a duty on the part of the revisers to report such a codifica-
tion and correction of the existing law as will make it clear, cer-
tain, and reasonably uniform in operation.

Argued March 7th—decided April 4th, 1900.

APPLICATION for the appointment of appraisers to estimate
the damages accruing to the defendant from the taking and
occupation of his land for railroad purposes, brought to and
heard by the *Hon. Samuel O. Prentice,* a judge of the Supe-
rior Court; facts found and judgment rendered in favor of
the plaintiff, and appeal by the defendant for alleged errors
in the rulings of the judge. *Error and judgment reversed.*

The facts are sufficiently stated in the opinion.

*Edward D. Robbins,* for the appellant (defendant).

*Charles E. Perkins* and *Arthur L. Shipman,* with whom
was *Charles E. Gross,* for the appellee (plaintiff).

BALDWIN, J. This is an application, brought in 1899, to
take land of the defendant as part of the site of a branch
railroad to run from Tariffville northeasterly to the line of
Massachusetts, which the plaintiff was authorized to construct
by an amendment to its charter, made in 1887. The allega-

tions are that in 1889 the stockholders of the company voted that it proceed forthwith to construct such a branch; that the board of directors thereupon made a location of it embracing the land in question; and that this location was duly approved by the railroad commissioners, after due notice to the plaintiff's grantors, in August of that year. The defendant moved that the application be dismissed, and also filed a demurrer, because it showed upon its face that it was not brought until more than nine years after the order of approval.

The General Statutes, Revision of 1888, Chapter 212, § 3439, declare that no land shall be taken for railroad purposes, except as otherwise provided in that chapter, "without the consent of its owner, except within two years after the approval of the location of the route by the railroad commissioners." This was the law in force when this proceeding was instituted, and must control its disposition.

It is urged that an examination of the history of this statute shows that it is not to be construed as applicable to railroad companies acting, like the plaintiff, under the authority of a special charter. Until 1867 there was no general law imposing upon such companies any limitation of time, with reference to condemnation proceedings. In that year it was enacted that "when the survey of any railroad company shall have been accepted by the railroad commissioners, said company shall procure and pay for the right of way of all lands through which they may pass, within twelve months, or make satisfactory arrangements with the parties owning said lands, or said acceptance by said commissioners shall be void." Public Acts of 1867, p. 98, Chap. 84. This was held to present a defense available to any landowner after the lapse of the time specified, independently of any action by the State. *New York, H. & N. R. Co.* v. *Boston, H. & E. R. Co.*, 36 Conn. 196, 202. In 1871 the first general incorporation law for railroad companies was passed. It gave (Public Acts of 1871, p. 666, Chap. 106, § 6) power to such organizations to enter upon real estate, for purposes of survey, and to construct and maintain a railroad on such route as they might select; adding that they should be "vested

with all the powers and privileges enjoyed by all other railroad companies in this State, subject to all the statutes which are now or may hereafter be enacted for the government of railroad companies, and all the immunities, rights, privileges, and powers given in this Act shall be enjoyed by the railroad companies at present existing in this State: *provided*, the same do not conflict with the special provisions of any charter." By § 10 it was further provided that "any railroad company may lay out and locate its road, and take any lands for the various purposes thereof, in the manner prescribed by the general statute laws of this State; but no land shall be taken without the consent of the owner thereof, except within twelve months after the approval of the location of the route by the board of railroad commissioners."

It is evident that this Act was intended in some respects to affect companies holding a special charter. There were, at the date of its passage, no railroad companies of any other description organized in this State; and there could have been none. Section 6 gave all the then existing companies the same privileges and immunities which were offered to such future ones as might be incorporated under the Act. It also invested the latter with all the privileges enjoyed by all the former, and subjected them to the same general statutory restrictions. One of these would have been that laid down by the Act of 1867, the language of which has been quoted, had it not been for § 10. That, as to the companies embraced in its terms, while imposing a twelve-month time limit for condemnation proceedings, unlike the Act of 1867, prescribed no special sanction in case of delay.

In the Revision of 1875, the provisions of the Act of 1871 were distributed under several Articles, in the Part concerning Railroad Companies (p. 315). That Article entitled "Organization of Companies" contained the portion of § 6 relating to entries on land for purposes of survey, but made it applicable to "every railroad company" as regards "the route specified in its charter or articles of association;" placing next after it as a separate section that clause of § 10 imposing a time limit for eminent domain proceedings, the

language of the original statute being kept substantially unaltered. No other provision for such a limitation was incorporated in that Revision. Of the other sections in the Act of 1871, several were placed in the Article on "Steam Railroads," for the government of all railroad companies "except when otherwise specially provided in their charters."

Obviously the revisers understood it to be the purpose of the legislature by the Act of 1871 to put all railroad companies substantially on the same footing in respect to the exercise of the power of eminent domain, except so far as special charters might, in any particular case, otherwise prescribe. It is incredible that they would else have failed to retain the twelve-month limitation of the Act of 1867, since to strike it out without replacing it by any other would have withdrawn the protection of a remedial statute of great importance from landowners throughout the State. In our opinion, they did not misconceive the legislative intent.

In 1882 an Act was passed entitled "An Act amending an Act concerning Railroad Companies." Of this, the operation of the first three sections was expressly confined to companies organized under the general railroad law: the other three were in terms applicable to all railroad companies. Section 1 of this Act read thus: "Every railroad company organized under the general railroad law may take land subject to the law in such case provided, at any time within two years after the approval of the location by the railroad comissioners." Section 2 allowed the commissioners to extend this time for two years more, in favor of any of the companies so organized, proceedings by which might have been delayed by litigation or other opposition. In the Revision of 1888, § 1 is reproduced by § 3439 in Chap. 212, in the form already stated. The saving clause in § 3439 referred to § 3440, in which was contained the power of extending the time limit in favor of companies organized under the general railroad law, given by § 2 of the Act of 1882.

Here again the authors of the Revision evidently and

rightly considered it to be the true design of the legislature to place all railroad companies on the same general footing as respects the time for commencing condemnation proceedings. It would be unreasonable to suppose that unchartered companies were intended to have for this purpose a year more than chartered companies. It would have been equally unreasonable to suppose that chartered companies had been left for thirteen years without any limitation at all in this respect.

The Resolution under which the revisers were appointed authorized them to "revise the public statutes and prepare a new edition for publication," reporting their doings to the General Assembly of 1887. 10 Special Laws, 185. As no specific directions as to the mode of revision were thus prescribed, it must be presumed that they were expected to proceed in the manner which has been usual in this State. What this is sufficiently appears in the prefaces found in most of our Revisions. The revisers have generally been particularly instructed by the terms of their appointment. Thus, the commission of those who had prepared the previous Revision (that of 1875), had been that they should "as far as practicable, consolidate all Acts relating to the same subject-matter, correct ambiguities, supply all manifest omissions, insert such notes and references to the judicial decisions in this State as they may deem expedient, annexing thereto all statutes heretofore enacted relating to the settlement of inhabitants, if deemed expedient, arranging said edition in such manner as they may deem best, and report their doings to the next General Assembly." Revision of 1875, Preface, xi. Similar terms had been used in the resolutions providing for the two last preceding Revisions. Rev. of 1866, Preface, iv; Rev. of 1849, Preface, iii; Cf. Rev. of 1821, Preface, viii. But, whatever may have been the precise terms used by the legislature, the general intent has always been the same. The end in view was to secure such a codification and correction of the existing law as would make it clear, certain, and reasonably uniform in operation.

This it was for the revisers to prepare and the legislature to adopt, or as it might think proper, to. modify or reject.

The Revision of 1888, by the section under consideration, carried out what had undoubtedly been the general intent of the legislature, and its approval by the General Assembly in 1887 made it the law of this case.

There is nothing inconsistent with this view in the provisions of an " Act concerning Railroads," passed in 1895. Public Acts of 1895, p. 542. This makes the principal sections of Chap. 214, (concerning the " Location and Construction of Railroads " ) of the General Statutes part of the charter of every company incorporated by the General Assembly to construct, own or operate a steam railroad in this State. That some of these, at least, were applicable to chartered companies has been previously determined by this court. *Cockcroft's Appeal*, 60 Conn. 161, 164. This Act of 1895 seems designed to further the policy of treating all steam railroads alike in respect to the mode of their construction ; and there is no reason to suppose that, had the attention of the legislature then been called to the provisions of Chap. 212 which are now in question, it would not have included them also within the terms of the new law, had this been thought necessary to give the benefit of them to landowners as against chartered companies.

It is unnecessary to determine whether there was error in denying the defendant's motion to dismiss the application. Ordinarily such a motion can be granted only when the proceeding is either totally void, or beyond the jurisdiction of the tribunal before which it is brought. But the demurrer should have been sustained. The application showed upon its face that it was brought seven years too late. No justification for the delay was stated and none could have been. When the effect of a statute of limitation can be avoided by a new promise, it is the proper subject of a plea or answer, so that the plaintiff may have an opportunity to reply. But a proceeding of the character of that at bar rests on no contract, and is *stricti juris*. The plaintiff stated its claim fully, and the statement showed that it could not, under any cir-

cumstances, maintain it against the defendant's objection. It was therefore his right to set this up by demurrer. *Rhode Island* v. *Massachusetts*, 15 Pet. 233, 272; *O' Connor* v. *Waterbury*, 69 Conn. 206, 210.

There is error, the judgment is set aside, and the cause remanded to the judge of the Superior Court for the entry of a judgment in favor of the defendant on his demurrer.

In this opinion the other judges concurred.