THE HARTFORD AND CONNECTICUT WESTERN RAILROAD COMPANY *vs.* FRED C. WAGNER.

*Third Judicial District, New Haven, January Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Under General Statutes, § 1911, it is essential that an amendment to its charter, giving a corporation the right to condemn land, should be accepted and recorded.
A compliance with such statute is, however, sufficiently alleged in condemnation proceedings, by an averment in the complaint that the

---

*Transferred from first judicial district.

Hartford & C. W. R. Co. *v.* Wagner.

corporation had been given power to acquire the land in question by an amendment to its charter.

A provision in a charter amendment that it should "take effect from its passage," simply means that, if duly accepted, it thus takes effect by relation.

A power of election, if once fully exercised, is exhausted.

Section 3439 of the General Statutes provides that no land shall be taken for railroad purposes, against the consent of the owner, except within two years after the approval of the location of the route by the railroad commissioners. *Held* that the adoption of a valid, definite location or layout by a railroad company exhausted its power of election; that the location thus chosen and approved did not lapse or become ineffective merely because the company neglected to condemn the land within the time limited by the statute; and that a so-called relocation of a portion of the layout, ten years afterwards, in precisely the same place, although approved by the railroad commissioners, was of no effect, and did not create a new two-year period within which the land needed could be taken against its owner's consent.

Under General Statutes, § 3459, requiring a sum equal to $11 per mile of the length of any proposed railroad in this State to be deposited with the State treasurer before application is made for the approval of its location, where a part only of the location is presented for approval, the amount of the deposit is to be apportioned accordingly.

The location of a railroad in this State, if duly authorized and made, is separate and distinct from any location made in any adjoining State, and its validity cannot be impaired by any defect which may exist in the location in such State under its laws.

Chapter 166 of the Public Acts of 1889, p. 97, requiring a finding by a judge of the Superior Court as to the public convenience and necessity of a branch railroad, does not abridge any special franchise previously granted, authorizing the construction of a branch road.

Argued January 18th—decided February 6th, 1901.

APPLICATION for the appointment of appraisers in condemnation proceedings, brought to the *Hon. Samuel O. Prentice*, a judge of the Superior Court, and reserved by him, upon demurrer to the application, for the consideration and advice of this court. *Demurrer sustained ; application dismissed.*

The application stated these facts : Power to locate a branch railroad in East Granby, upon a route covering the land of the defendant, was given to the plaintiff by an amendment to its charter in 1887. In 1889, by vote of its directors, said branch railroad was "laid out and finally located,

subject to the written approbation and approval of said location by the railroad commissioners of the State of Connecticut, and to any modifications thereof which said commissioners may prescribe," upon said land, and the railroad commissioners duly approved such route and location, "except as to the grade at which said branch railroad crossed certain lands in the town of Simsbury in which the New Haven & Northampton Company and the New York, New Haven & Hartford Railroad Company claimed to have interest," as to which they ordered that said grade might be fixed and said work executed as might be agreed upon between the plaintiff and said New Haven & Northampton Company and the New York, New Haven & Hartford Railroad Company, or in case of the failure to agree, then as should thereafter be determined by said board. The plaintiff was unable to agree with said other companies as to said grade, and such proceedings were afterwards had that on December 3d, 1898, said board duly determined said grade.

In 1898 the plaintiff applied to *Judge Prentice* of the Superior Court for the appointment of appraisers of the land in question, which was then owned by one Montague, but the proceeding was dismissed on the ground that it was not brought within two years after the approval of the route by the railroad commissioners. Said former location as above stated, as to said Montague's land, lapsed and became void and of no effect, and a new location therefore became necessary in order to construct said road. Since said approval it has acquired by agreement title to the rest of the land within said location, and has constructed a railroad upon it at a cost of $300,000. In May, 1900, its board of directors voted to locate said branch railroad across said land of said Montague, upon the same center line and with the same widths specified in their vote of 1889, and $11 having been deposited with the State treasurer, this location was duly approved by the railroad commissioners, in August, 1900, after due notice to the defendant, who had received a conveyance of the title from Montague. The plaintiff could not agree with the defendant as to obtaining the land for railroad purposes.

Hartford & C. W. R. Co. *v.* Wagner.

*Edward D. Robbins*, for the defendant, in support of the demurrer.

*Charles E. Perkins* and *Charles E. Gross*, for the plaintiff, in opposition to the demurrer.

BALDWIN, J.   The allegation that the plaintiff had, by an amendment to its charter, been given power to locate a railroad on the defendant's land, was sufficient.   This necessarily implied that a proper vote accepting the amendment had been passed, and a copy lodged in the office of the secretary of the State, as required by General Statutes, § 1911, since otherwise the power would not have been given.

The provision of this amendment (10 Special Laws, 746) that "this act shall take effect from its passage," simply meant that, if duly accepted, it should thus take effect by relation.   Could the application have been heard on the facts, it would have been necessary to prove a compliance with General Statutes, § 1911.

But the objection raised by the demurrer, that the only location made by the plaintiff was made and approved more than two years before the application was brought, is well taken.   General Statutes, §3439.

It is a general rule of law that a power of election, if once fully exercised, is exhausted.   *State* v. *Norwalk & Danbury Turnpike Co.*, 10 Conn. 157, 163; *Williams* v. *Hartford & New Haven R. Co.*, 13 id. 397, 410; *State* v. *New Haven & Northampton Co.*, 45 id. 331, 346.   A power to locate a railroad " through any or all of " certain towns, such as was given to the plaintiff, is a power of election.   The election was made in 1889, by adopting a definite location in East Granby, which placed the road upon a certain part of the land now owned by the defendant.   That location was duly approved in the same year, except with respect to the grade to be maintained at certain points in Simsbury, which was left for future determination and not determined until 1898, when the railroad commissioners passed an order for that purpose, within two years before this application was brought.   The order

thus made did not vary or impair the previous approval of the location. The bounds of the lands upon which the railroad was to be placed remained unaltered. They had been defined under a power of election between different routes, more than two years previously.

The application to *Judge Prentice*, made in 1898, was, therefore, held to have been brought too late. *Hartford & C. W. R. Co.* v. *Montague,* 72 Conn. 687.

The vote adopting the same location upon the defendant's land, passed by the board of directors of the plaintiff, after that decision, was void. It recites as its motive and justification, that the "former location so far as the same crossed said lands so owned by said Montague has lapsed and become void and of no effect, and a new location has become necessary in order to construct said road." No such lapse has occurred. The original location upon this land is in full force. The railroad can be built and operated upon it, provided a right of way is secured from the landowner. That the plaintiff by its procrastination has lost its privilege of taking it without his consent, cannot revive an exhausted power.

It is true that the vote of 1900 does not purport to change the election already made. It simply restates and affirms it. But the act of location having been completed in 1889, could not receive any new force, as against the defendant, by its re-affirmation in 1900. The object of General Statutes, § 3439, is threefold: to protect landowners against what might otherwise be a perpetual cloud upon their estates; to protect the public by furnishing a strong motive for the speedy construction of the railroad, if it is to be constructed at all; and to make sure that the high power of eminent domain shall be exerted only when it has been found to be necessary under conditions shown to exist so near the time of the proceeding that they may fairly be presumed to continue unchanged. Two of these purposes would be defeated if successive votes and successive orders of approval could extend the time without varying the route.

It is argued that such proceedings would be obviously necessary, if by some mistake of law or fact a location had been

made on the land of one to whom no notice of the application for its approval was given. But such a location would, as to him, be void, and it is upon this ground only that a relocation could in such a case be justified. Here the defendant's predecessor in title had due notice of the original application for the approval of the location in 1889.

The vote of location passed in 1900 being void, the order approving it had nothing to rest on, and was void, also.

General Statutes, § 3439, cannot be construed as equivalent in meaning to the earlier Act of 1867 on the same subject, which provided that if any railroad company should fail to arrange for the acquisition of all necessary rights of way within twelve months after the approval of its location, that approval should be void. The latter clause was dropped, and no doubt advisedly, in the Act of 1882, which formed the basis of the present statute. *Hartford & C. W. R. Co.* v. *Montague*, 72 Conn. 687, 691.

The averment in the application that $11 had been deposited with the State treasurer was sufficient to satisfy the requirements of General Statutes, § 3459. Part of a railroad may be located at one time and part at another, and each location, as it is made, may be submitted to the railroad commissioners for approval. The part which was the subject of this proceeding was less than a mile in length, and the provision for a deposit of "eleven dollars per mile of the length of its proposed road in this State," is to be construed as proportioning the sum required to the mileage of such part of the location as is proposed for approval.

Two other points are raised by the demurrer which attack the foundation of the plaintiff's title to construct the branch railroad now in question.

Its location and construction were authorized by a vote of the plaintiff corporation in 1889, describing it as a branch designed "to establish a railroad connection between the main line of this company's railroad and the city of Springfield," and to be constructed from such point as the directors might fix on the State line, in Suffield, "northeasterly through the towns of Agawam and West Springfield, and across the Con-

necticut River into the city of Springfield." The vote of the directors passed in 1900, on which the present application is founded, shows that the branch has been duly located through Suffield to the State line, and thence " northeasterly to a point on the Boston and Albany Railroad in the town of West Springfield in the State of Massachusetts, whence said branch railroad has connection into the city of Springfield." There is no merit in the claim that a fatal departure is thus disclosed from the line prescribed by the stockholders. Whether the branch was to be extended across the Connecticut River upon a bridge built by the plaintiff, or one bought by the plaintiff, or one used by the plaintiff under contract with its proprietor, was a matter of no concern in this proceeding. The location made within this State was duly authorized by law and made by the directors. It was a separate and distinct thing from any location made in Massachusetts under Massachusetts laws, and its validity could not be impaired by any defect which might exist in that.

Nor was it necessary for the plaintiff to obtain a finding from a judge of the Superior Court, under Chap. 166 of the Public Acts of 1889, p. 97, that the construction of this branch was a public necessity and convenience. That statute abridged no special franchises previously granted. It simply afforded a means to all railroad companies of obtaining similar privileges, on certain conditions.

We advise that the demurrer be sustained and the application dismissed as insufficient.

In this opinion the other judges concurred.