## In re Hartford and Connecticut Western Railroad Company.

First Judicial District, Hartford, March Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Chapter 166 of the Public Acts of 1889 authorizes any railroad company in this State to build branches from its main line, provided the construction of such branch is found by a judge of the Superior Court to be of public convenience and necessity. *Held* that the Act had no application to a railroad company which had duly located and nearly completed the construction of the branch road in question, under an amendment of its charter. Under such circumstances the finding as to public convenience and necessity, required by the statute, has already been settled by legislative action, and nothing remains for the judge of the Superior Court to pass upon.

Section 3439 of the General Statutes provides that no land can be taken for railroad purposes, against the owner's consent, except within two years after the approval of the location of the route by the railroad commissioners. *Held* that after a railroad company had once lost this power of condemnation, it could not revive it by voting to readopt the old route and location and by securing anew the approval of the railroad commissioners. Nor did it make any difference, in the case at bar, whether the railroad company acted under its charter amendment of 1887, or under the Act of 1889; in either case its neglect for more than two years to take the land barred its right of condemnation.

Argued March 5th—decided April 18th, 1902.

APPLICATION for a finding that public convenience and necessity required the construction of a branch railroad from Tariffville to the Massachusetts line, brought to and heard by the *Hon. William S. Case*, a judge of the Superior Court, upon demurrers to the amended application; the judge sustained the demurrers and dismissed the application, and the applicant appealed for alleged error in the rulings of the judge. *No error.*

The application as amended alleges, in substance, that the plaintiff desires to construct a branch railroad from its main line, from the village of Tariffville, northeasterly to the

northern boundary line of this State, substantially upon the route which, under an amendment to its charter approved in 1887, was duly located by the plaintiff, and was approved by the railroad commissioners August 14th, 1889; that the plaintiff has constructed its road over said entire route, excepting over a piece of land owned by the defendant Wagner, for a right of way over which piece the plaintiff supposed it had agreed with the then owners thereof; but that while the plaintiff was negotiating therefor, one Montague purchased said land and the same has since been conveyed to said Wagner, both of whom were acting in the interest of those opposed to the construction of said road, and from neither of whom has the plaintiff been able to obtain a right of way over said land.

The application further alleges the failure of certain condemnation proceedings heretofore instituted by the plaintiff, because not commenced within the two years limited by § 3439 of the General Statutes, and avers that it has no power to take said land under said location so made under its charter amendment, and that therefore it brings this application under the general law of 1889, in order to obtain such a location of said road as will enable it to obtain a right of way over said land of said Wagner and complete its said road.

To this application the defendants, Wagner and the New York, New Haven and Hartford Railroad Company and the New Haven and Northampton Company demurred, upon the grounds, in substance, that it is not alleged that the desire and purpose of the plaintiff to construct said branch has been expressed by any action by the plaintiff's board of directors or other proper officials; that it has been adjudicated in the previous proceedings described in the application, and appears from the application, that the plaintiff by its *laches* has lost its right to locate and construct such branch railroad upon said land without the consent of the owners thereof; that it appears by the application that the plaintiff in 1889 exercised its right to locate its road upon said land, and therefore that it has exhausted its power to locate said

branch road; that it appears that the location sought to be made is the one adopted and approved in 1889, and that therefore the plaintiff has no power to build such road without the consent of the defendants; and that if the plaintiff has the power to construct said branch road it has it wholly irrespective of the finding of public convenience and necessity asked for by the application.

The judgment sustaining said demurrers and dismissing the application is the only error assigned in the appeal.

*Charles E. Perkins* and *Arthur F. Eggleston*, for the appellant (the applicant).

*Henry Stoddard* and *William F. Henney*, for the appellees (the New York, New Haven and Hartford Railroad Company and Fred C. Wagner).

HALL, J. By an amendment of its charter in 1887 the plaintiff was empowered to locate and construct the branch railroad described in the application, and for that purpose to "enter upon and take lands and do all other acts in and about the location, construction, completion, maintenance, and operation of said branch railroad," in the manner provided by the statute laws of this State. 10 Special Laws, p. 746.

At the time of such amendment of the plaintiff's charter there was in force a general law permitting any railroad company to construct branches from its main line to any place in this State, subject to certain general statutory provisions. This general law, which appears in § 27, p. 323 of the Revision of 1875, and in § 3472 of the Revision of 1888, was repealed by the Act of 1889, upon which the plaintiff relies as authorizing the present application. Public Acts of 1889, Chap. 166.

For the purpose of laying out and finally locating its said branch railroad, as required by § 3460 of the General Statutes, the plaintiff, in July, 1889, applied to the railroad commissioners for their written approbation of the location of said branch road, and the same was duly approved by said commissioners on the 14th of August, 1889.

Since said branch railroad was thus duly located and approved by the railroad commissioners, the plaintiff, as appears by the allegations of the present application, has obtained the right of way and, at an expense of over $300,000, has constructed its track over said entire route so located, excepting over certain land now owned by one Wagner and by the New York, New Haven and Hartford Railroad Company, a right of way over which the plaintiff has been unable to obtain.

In 1898, for the purpose of taking said land in the manner provided by § 3464 of the General Statutes, in order to complete the construction of said branch road as thus located, the plaintiff applied for the appointment of appraisers to estimate the damages which would arise from such taking of said land, and the then defendant Montague, who held the title to the land, now said to be owned by the present defendant Wagner, opposed the appointment of such appraisers upon the ground, among others, that such condemnation proceedings were not commenced until more than nine years after the approval of the location of the route by the railroad commissioners, and that § 3439 of the General Statutes provided that no land could be taken for railroad purposes without the consent of the owner, except within two years after such approval. The plaintiff contended that § 3439 applied only to railroad companies organized under the general railroad law, and not to the plaintiff company which was said to be acting under its special charter. This court held that § 3439 applied to companies acting under special charters as well as to those organized under the general law, and that as respects the time for commencing condemnation proceedings it was the design of the legislature, by the section in question, to place all railroad companies upon the same footing, except as otherwise provided in special charters, and that therefore the plaintiff was not entitled to the appointment of appraisers under the provisions of § 3464. *Hartford & C. W. R. Co.* v. *Montague*, 72 Conn. 687–691.

In September, 1900, for the purpose of condemning the same land under the provisions of § 3464, in order to com-

plete said branch, the plaintiff again applied for the appointment of appraisers, alleging in its application that said original location of 1889 had become void, that a new location had become necessary, and that the plaintiff's board of directors, by a vote passed in May, 1900, had adopted a location which had, in August, 1900, been approved by the railroad commissioners.

This court held that such second vote of location, and the order of the railroad commissioners approving it, were void; that the original location of 1889 was still in force; that the plaintiff by its procrastination had lost the privilege of taking defendant's land without his consent; that by adopting a definite location in 1889 the plaintiff had exhausted the power, granted by the amendment to its charter in 1887, of electing a location of said branch road over the defendants' land, and that the plaintiff was therefore not entitled to the appointment of appraisers upon said application.

By the present application, asking a judge of the Superior Court to find that the construction of said branch is of public necessity and convenience, the plaintiff claims the right, under Chapter 166 of the Public Acts of 1889, to relocate said branch road, with the consent of the railroad commissioners, upon the route approved by the commissioners in 1889, and to make such relocation and approval the basis of another application for the appointment of appraisers in condemnation proceedings under § 3464.

The judge of the Superior Court to whom this application was made committed no error in holding, by sustaining the defendants' demurrer to the application, that the plaintiff was not entitled to a finding whether the construction of such branch would be of public necessity and convenience.

Section 1 of the Act of 1889, upon which this proceeding is based, provides that "any railroad company in this State may build branches from its main line or from any of its leased lines; *provided*, that the construction of such branch is found by a judge of the Superior Court, upon due appli-

cation after such reasonable public notice as such judge may order, to be of public necessity and convenience."

Upon the facts alleged in the amended application before us, it is manifest that the section above quoted conferred no jurisdiction upon a judge of the Superior Court to pass upon the question of whether public necessity and convenience requires the construction of this branch railroad.

Whether the plaintiff be regarded as proceeding under the amendment of its charter in 1887, or under the general law of 1889, it is endeavoring by this application to obtain an adjudication by a judge of the Superior Court upon the question of the necessity of constructing the same branch railroad which, in 1887, the legislature, by a special grant "authorized and empowered" it "to locate, construct and complete," and upon the same route and location which was lawfully laid out and adopted by the plaintiff and approved by the railroad commissioners in 1889, and the construction of which branch, except a small part over the land in question, was completed upon said duly located route before this application was made.

A decision of the preliminary question of the necessity and expediency of building this branch, was necessarily involved in the action of the legislature of 1887 in granting to this corporation the privilege of constructing it, and of exercising for that purpose the right of eminent domain, and such legislative adjudication was final. *New York, N. H. & H. R. Co.* v. *Long*, 69 Conn. 424, 435. Although before different tribunals, the same question of public necessity and convenience is presented upon an application to the legislature for a special charter for the construction of a branch railroad over a given route, as by an application to a judge of the Superior Court in proceedings to build such branch under the general law of 1889.

Obviously, the main purposes of the Public Act of 1889 were to modify the provisions of § 3472 by limiting the power, as to the construction of branch roads, of railroad companies not acting under the authority of special charters, to the building of such branches only as should be found to

be of public necessity and convenience, and to confer juris-diction of the question of public necessity and convenience in such cases upon a judge of the Superior Court. But as the legislature in 1887 granted the plaintiff the special privi-lege of constructing this branch, and as the plaintiff has ex-ercised the power so conferred, not only by locating the road and obtaining the approval of such location by the railroad commissioners in the manner provided by law, but by actu-ally constructing nearly all of the branch road, a judge of the Superior Court, under the Act of 1889, could neither prevent the plaintiff from finishing the work, by finding that public necessity and convenience does not require it, nor add anything to the plaintiff's right to complete it, by a find-ing that it is of public necessity and convenience.

We said, in effect, in *Hartford & C. W. R. Co.* v. *Wagner*, 73 Conn. 506, 512, that a finding by a judge of the Superior Court, that the construction of this branch was of public necessity and convenience, would not aid the plaintiff in proceedings for taking the defendants' land under § 3464, but that the purpose of the Act of 1889 was simply to afford all railroads the same means of obtaining, on certain condi-tions, privileges similar to those which had been granted the plaintiff by special charter. Want of jurisdiction of the sub-ject-matter of the application was therefore a sufficient rea-son for the action of the judge of the Superior Court in dismissing it.

But since the only purpose of this proceeding was the ultimate taking of the defendants' land by condemnation proceedings, the judge was also justified in dismissing the application, upon the ground that the allegation in the appli-cation of the fact that a special privilege had been before granted the plaintiff to construct this road, and of the man-ner in which the railroad company had exercised, and had delayed the exercise of the right thus granted, showed that the plaintiff could not, through any action which might be taken under the Act of 1889, acquire the right to take the defendants' land by condemnation proceedings.

Undoubtedly the plaintiff might, in 1889, had there been

any reason for doing so, have proceeded in the construction of this branch road under the general law instead of under the authority of its amended charter; or, if having commenced the work under its charter it had become unable to complete it because of the more limited powers granted by its charter than by the general law, or because of its failure to perform some special condition imposed by its charter, it might at any stage of the work have resorted to the general law, provided the requirements of that law had been complied with. But the plaintiff is not seeking to avail itself of the Act of 1889, because of its inability to complete the branch road on account of a failure to comply with some requirement peculiar to its charter, or of the insufficient powers conferred by the amendment of 1887. If the plaintiff in 1889 had commenced the construction of this branch under the general law, as we have said it might have done, and had thereafter proceeded in the manner that it has, while claiming to act under its charter, it would still be unable to take the land in question without the consent of its owners, and for the same reason that it is now unable to so take it.

The plaintiff's charter contains no special provision either as to the time or the manner of exercising the power of eminent domain. Sections 3439 and 3464 of the general statutes prescribe the time and the manner of taking land for railroad purposes without the consent of the owner, and both of these sections were applicable to proceedings for the construction of this branch road, whether the plaintiff acted under the amendment of its charter, or under the general law of 1889. *Hartford & C. W. R. Co.* v. *Montague*, 72 Conn. 687.

The plaintiff's inability to condemn the defendants' land is due, therefore, not to any failure on its part to conform to the requirements of its charter, but to its failure to comply with the general law of the State, which limits the time within which any railroad company may take land without the consent of its owner to two years after the approval of the location of the route by the railroad commissioners, unless that time be extended as provided in § 3440.

Another adoption of the proposed route by vote of the

plaintiff's directors, and another approval of the location by the railroad commissioners, would give the plaintiff, by virtue of the provisions of the Act of 1889, no greater right to take the defendants' land by condemnation proceedings under § 3464 than it now has, nor than it possessed when such a taking was attempted by the proceedings instituted under that section, in the case of *Hartford & C. W. R. Co.* v. *Wagner*, 73 Conn. 506, 511. The question of public necessity and convenience having been decided by the legislature, the steps which were taken by the plaintiff while claiming to act under its charter, are those which it would have taken had it been proceeding under the general law. The location of the branch road upon the land in question had been lawfully made and approved, and is still in force, and the plaintiff, upon securing a right of way over that land, may build its branch road upon it by virtue either of the provisions of the amendment of its charter in 1887, or of the general law of 1889. What the plaintiff has lost by its procrastination is not the location of its branch road, but the power to take the defendants' land by condemnation proceedings, and that power it cannot regain by making a new location merely for the purpose of avoiding the effect of the provisions of § 3439.

In view of these conclusions it is unnecessary to consider the other grounds of the demurrers.

There is no error.

In this opinion the other judges concurred.