## ARNOLD COLLEGE FOR HYGIENE, ETC.
*vs.*
## CORNELIUS J. DANAHER, ADMINISTRATOR, UNEMPLOYMENT COMPENSATION

Superior Court    New Haven County    File No. 64138

MEMORANDUM FILED JANUARY 13, 1944.

*Thomas R. Robinson,* of New Haven, for the Plaintiff.

*Harry Silverstone,* Assistant Attorney General, for the Defendant.

INGLIS, J. This is an appeal from certain assessments of contributions covering the period from the third quarter of 1941 to the second quarter of 1943, inclusive, made against the plaintiff by the Unemployment Compensation Commissioner. The principal question involved is as to whether the plaintiff is "a corporation. . . .organized and operated exclusively for. . . .educational purposes. . . ., no part of the net earnings of which inures to the benefit of any private shareholder or individual", and therefore exempt from the Unemployment Compensation Act. (Supp. [1939] §1335e.)

The plaintiff was incorporated in 1929 by special act of the Legislature for educational purposes but the charter contains no express provision preventing any profits which might be made therefrom inurring to the benefit of individuals. Upon its organization it took over the operation of a school theretofore conducted by The Anderson Gymnasium Company and has continued to operate it ever since. From 1929 to 1937 the school was operated at a loss. From 1937 to 1942, except in 1940, profits were made, but they have been applied to reduce the indebtedness which accumulated in the earlier years. In 1943 the corporation has sustained a substantial loss. During the whole life of the corporation the profit and loss item on the financial statement has always been in the red. As a matter of fact there has never been any distribution of any profits to the members of the corporation, who are the trustees. The trustees have received no compensation for their services

as such and no one has received anything from the corporation except as reasonable compensation for services rendered.

On February 1, 1941, the trustees of the plaintiff voted "to put a bill in the 1941 State Legislature amending the charter granted to Arnold College in 1929....to so change the respective passage in this charter as to make it an absolute non-profit institution." Thereafter counsel for the plaintiff prepared a bill, caused it to be introduced in the General Assembly and lobbied for its passage; and the bill was passed and approved on June 18, 1941. That bill amended section 2 of the charter, the section defining the purposes of the corporation, by adding thereto the following: "provided, no part of the net earnings of said corporation shall inure to the benefit of any private person or individual, nor shall any of the property or funds of said corporation upon its dissolution inure to any such private person or individual, but shall be devoted to charitable and educational purposes forever, and provided no officer, member or employee of said corporation shall receive at any time any pecuniary profit from the operation thereof, except reasonable compensation for services in effecting the purposes of such corporation." Through inadvertence and ignorance the corporation failed to accept that amendment and file such acceptance with the Secretary of State within six months as provided in section 3370 of the General Statutes, Revision of 1930. In the 1943 General Assembly the plaintiff procured the passage of a bill extending the time in which the plaintiff might accept the amendment but that bill was vetoed by the Governor.

On August 21, 1941, the Unemployment Compensation Department wrote the plaintiff to the effect that it found that the plaintiff was a non-profit educational institution and that "contributions will, therefore, not be required with respect to wages paid after June 30, 1941." Then on October 2, 1942, it again wrote the plaintiff stating that in view of the fact that it, the plaintiff, had not accepted the amendment, the deparment had "re-opened your account as of July 1, 1941." On July 28, 1943, the Administrator notified the plaintiff that he had made the assessments of contributions against the plaintiff amounting with interest to August 28, 1943, to $1,270.98, from which assessments this appeal is taken.

The first contention of the plaintiff is that even irrespective of the amendment of its charter passed in 1941 it is exempt from the Unemployment Compensation Act because as a mat-

ter of fact no one during the period covered by the assessments was receiving any profit from the institution. It is argued that the word "inures" in the statute is in the present tense and that therefore this statute is to be interpreted differently from the statute, section 1163 of the General Statutes, Revision of 1930, exempting real property from taxation, which provides for exemption of charitable or educational corporations only if any officer, member or employee thereof does not receive "or at any future time shall not receive any pecuniary profit." Accordingly, it is said the question is as to whether any person is now actually receiving any profit, and it makes no difference as to what may happen in that regard in the future.

If this interpretation were correct the exemption feature of the Unemployment Compensation Act would be unworkable as to any corporation which had the power to distribute profits. Contributions under the statute are assessed quarterly. Whether a profit had been made in any given year and whether that profit was to be distributed to the members of a corporation would not ordinarily be determined until the end of the year. If the plaintiff's contention were correct, how could the Administrator know whether to make an assessment for the first three quarters of the year or not? And even though the Administrator could get the information, the result would be that any given corporation might be liable for contributions in one quarter and not in the next. Bearing in mind that it is the purpose of the Act to build up a fund for the benefit of the employees of only those employers who are liable for contributions, it is unthinkable that the Legislature could ever have planned a situation wherein employees of a corporation would never know from one quarter to another whether in the event of unemployment they would be entitled to compensation.

The statute in question exempting certain employers from liability for contributions, like all other statutes which exempt from taxation, must be strictly construed against those who seek exemption thereunder. *Waterbury Savings Bank vs. Danaher,* 128 Conn. 78, 83. The provision of the statute is that there shall be exempted corporations "organized and operated exclusively for....educational purposes." Clearly it is not the intent to exempt corporations which are organized for the purpose of making a profit for individuals in addition to providing education. Here as well as under the statute exempt-

ing from the property tax, it is obviously the intent to exempt only the corporations whose earnings and assets are segregated from private and devoted exclusively to public uses. *Pomfret School vs. Town of Pomfret,* 105 Conn. 456, 459. The plaintiff's charter does not preclude the making of a profit nor the distribution of that profit among its members. *Canterbury School, Inc. vs. Town of New Milford,* 111 Conn. 203. The plan of its organization, therefore, is not exclusively for educational purposes.

Moreover, the interpretation contended for by the plaintiff ignores the clear intendment of the phrase, "inures to the benefit of." In everyday speech "inures" means accrues to the benefit of. Upon dissolution of such a specially chartered corporation without capital stock the assets will be distributed to the members of the corporation. *Pomfret School vs. Town of Pomfret,* 105 Conn. 456, 462. It can make no difference that no profits have been made to date. *Canterbury School, Inc. vs. Town of New Milford,* 111 Conn. 203; *Brunswick School vs. Town and Borough of Greenwich,* 88 id. 241, 243. It is always conceivable that profits will be made. Nothing in the charter prevents it. When they are made if they are not distributed they go to increase the assets and thereby enhance the pecuniary value of membership in the corporation. It is clear, therefore, that unless there is some provision in the charter of a corporation which precludes the distribution to its members upon dissolution, every bit of net income which is put back into the business accrues to the benefit of the individuals who comprise the membership of the corporation. It inures, that is, to the benefit of individuals.

The plaintiff corporation charges tuition. It is not precluded from having net earnings. When it has net earnings something must be done with them. They must either be distributed to the members of the corporation or be accumulated as part of the capital assets of the corporation. In either case they inure to the benefit of the individuals. The only educational corporations which are exempted from paying contributions under the Act are those in which no part of the net earnings, assuming that they have net earnings, inures to the benefit of any individual. Clearly the plaintiff corporation, so long as its charter does not preclude the possibility of any of its net earnings that it may make accruing to the benefit of its individual members, is not such a corporation as is exempt under this provision of the Act.

The second contention of the plaintiff is that the amend-ment of its charter enacted in 1941 became effective without its having been accepted by the corporation. Two sections of the General Statutes, Revision of 1930, are involved. They are sections 3370 and 3371. Section 3370 provides that "when any amendment or alteration of the charter of any specially chartered corporation shall be made, if it be not other-wise especially provided in the act making such alteration or amendment, it shall not become operative unless, within six months after its passage, it shall be accepted at a meeting of such corporation warned and held for that purpose, nor unless, within said period, an attested copy of said acceptance shall be filed in the office of the secretary of the state....; and such acceptance shall make the original charter and all resolu-tions amending and altering the same subject to amendment, alteration and repeal, at the pleasure of the general assembly." Section 3371 provides that, "all acts....authorizing the or-ganization of corporations or altering the charters of corpora-tions, which have been or shall be passed by the general as-sembly, and all charters under which no corporation has been organized, shall be subject to alteration, amendment and repeal at the pleasure of the general assembly, unless otherwise ex-pressly provided in such acts", but that no such amendment shall impair any vested rights.

These sections in substantially their present form were both adopted in 1845 as a result of the decision of the Supreme Court of the United States in the *Dartmouth College Case* (4 Wheat. 518), obviously with the purpose of reserving to the General Assembly the right to amend and repeal any charter which might thereafter be granted and any charter theretofore granted if the corporation thereafter accepted any amendment thereto. The argument of the plaintiff is that section 3370 was intended to apply only to those corporations which had been chartered prior to 1845 with "closed" charters; that section 3371 was intended to cover the corporations to be chartered after the passage of the act and to make it plain that all such charters would be "open" to amendment or repeal at any time; and that, therefore, the requirements of section 3370 do not control the plaintiff because it was chartered in 1929.

Some light is thrown on the situation by the fact that when these two sections were first adopted in 1845 they formed a part of a single act entitled "An Act relating to Corpora-

tions" (Public Acts of 1845, chap. 12), and that they were in the reverse order to that in which they now appear. The present section 3371 was the first section of that Act and section 3370 was the second section. From that fact the contention of the plaintiff that the only purpose of the present section 3370 was to provide a means of opening up charters which theretofore, under the *Dartmouth College* Case had been closed, loses force. It becomes clear that what the Legislature intended to do was to lay down the principle in the present section 3371 that all future charters were amendable and then in the present section 3370 to provide as a condition to such amendment's becoming effective, unless it ordered otherwise, that the corporation must accept the amendment and file that acceptance with the Secretary of State. It is true that the General Assembly of 1845 also provided in the present section 3370 that the acceptance of any amendment to a closed charter would operate to open it for future amendment or repeal, but that clearly was an additional provision and was not intended to operate as a restriction of the applicability of the first part of the section to only such corporations as accepted an amendment to their theretofore closed charters. It clearly was intended to require an acceptance of any amendment which might be passed, whether it be an amendment of a charter granted before 1845 or one to be granted thereafter, and then by way of addendum provide that such acceptance of an amendment of a closed charter would operate to make that charter amendable at the will of the Legislature.

It is suggested by the plaintiff that such an interpretation, resulting as it does in a situation which requires acceptance of an amendment by the corporation, nullifies the purpose of the legislation which was, of course, to reserve to the General Assembly the power to amend or repeal even against the will of the corporation. Such a suggestion loses sight of the fact that section 3370 contains the proviso, "if it be not otherwise specially provided in the act making such alteration." With this proviso in, the Legislature has reserved the right to alter or repeal a charter even against the will of the corporation, but, at the same time, has said that unless it does so provide no amendment shall become operative until it is accepted.

There is nothing in our decided cases which controverts this interpretation of these two sections. In *Town of Southington vs. Southington Water Co.,* 80 Conn. 646, it is true, a special

act of the General Assembly authorizing a town to subscribe for the stock of the specially chartered water company and providing that if the town did so subscribe it might purchase the entire works of the company at cost, is treated as an amendment of the charter of the water company, and it is held when the company accepted the subscription it was chargeable with notice of the limitation on the power of the town to sub- scribe, and therefore became subject to the obligation to sell its assets. No mention is made in the opinion of whether the water company had accepted the act as an amendment and apparently no point had been made in argument to the effect that the amendment was not operative because it had not been accepted. The case, therefore, is no authority on the present question.

In the same way, in *Perkins vs. Coffin*, 84 Conn. 275, there was no record of the acceptance of an amendment to the charter of a specially chartered company, which amendment was being relied upon to have opened the charter for another amendment 50 years later. The court, however, found that the powers granted in the former amendment had been exer- cised by the corporation for the 50 years and, from that, im- plied an acceptance. In the discussion of this matter in the opinion at page 287 no reference is made to the requirements of the statute here involved and it would not appear that the court took the statute into consideration. For that reason the case casts no light on the present question.

On the other hand, *Hartford and C. W. R. Co. vs. Wagner*, 73 Conn. 506, holds that an allegation that a charter had been amended necessarily implied that a proper vote accepting the amendment had been passed by the corporation and filed with the Secretary of State. The court says at page 509: "Could the application have been heard on the facts, it would have been necessary to prove a compliance with General Stat- utes, §1911." ( Gen. Stat. [1930] §3370.)

The wording of the statute is plain and what cases there are on the subject tend to support the conclusion that it requires a vote of acceptance by the corporation and a filing of a certified copy of that vote before an amendment of the charter of such a specially chartered corporation as the plaintiff shall become operative.

It is also contended by the plaintiff that it was relieved of the necessity of accepting the amendment by reason of the

fact that it had itself asked for the amendment. To support this contention it cites *Water Commissioner vs. Manchester,* 89 Conn. 671, 678. The difficulty, however, is that in that case, the plaintiff whose charter had been amended was a municipal corporation (Cf. earlier opinion, 87 Conn. 193, 195) and as such was not controlled by section 3370. There is no requirement of the general statutes to the effect that at amendment of the charter of a municapal corporation must be accepted before it becomes effective. Accordingly, this case offers no support for the plaintiff's contention.

On the whole, therefore, it is concluded that the amendment to the charter of the plaintiff passed in 1941 never became operative because it was not accepted by vote of the corporation and that vote filed for record as is required by section 3370 of the General Statutes, Revision of 1930.

On August 21, 1941, the Unemployment Compensation Commissioner, relying on the amendment of the plaintiff's charter, ruled that contributions would not be required of the plaintiff with respect to wages paid after June 30, 1941. It was not until October 2, 1942, that the Administrator reversed that ruling. It is clear now that the first ruling was made under mistake of law. Although it is true that if the amendment had been accepted it would have become effective as of the date of its passage, it never did become operative because it never was accepted. At the time the Administrator made his ruling the amendment was not operative but was in suspense. *Hartford & C. W. R. Co. vs Wagner,* 73 Conn. 506. Accordingly, there was no change in either the facts or law of the situation between June 30, 1941, and October 2, 1942. There was only a change of mind on the part of the Administrator. For that reason the holding in *Waterbury Savings Bank vs. Danaher,* 128 Conn. 78, 91, controls this case. The change in ruling on October 2, 1942, is valid as to the future from and after that date but cannot be retroactive so as to make the plaintiff liable for contributions prior to then and subsequent to June 30, 1941.

Judgment may enter sustaining the appeal as to the assessment of contributions for the third and fourth quarters of 1941 and the first, second and third quarters of 1942, and denying the appeal and confirming the assessments of contributions for the fourth quarter of 1942 and the first and second quarters of 1943.