### The Pomfret School *vs*, The Town of Pomfret.

First Judicial District, Hartford, October Term, 1926.

Wheeler, C. J., Curtis, Maltbie, Hinman and Avery, Js.

Privately owned school buildings were not exempt from taxation as an "academy" under Chapter 109 of the Public Acts of 1921, since repealed, unless exclusively occupied for the maintenance of a school where the instruction given was, except for incidental purposes, in grades superior to those of the ordinary primary school, and unless wholly sequestered from private and devoted to public use.

Whether or not a school operated at a profit was not, in itself, determinative of the question of its right to exemption.

During the year 1923, the student body of the Pomfret School, limited to boys over twelve years of age, numbered one hundred and twelve scholars, who were admitted upon examination prescribed by the so-called secondary board, and all of whom were furnished with room, board, care and training on the premises as well as instruction by a faculty of fifteen teachers, at an annual charge to each of $1,350. Tuition was offered to no one without cost or at a rate sufficiently moderate to afford to the youth of the community an economical substitute for the public schools. *Held* that the institution was essentially a private school and was not devoted to a public use in the sense contemplated by the exemption statute.

Although the school in fact operated at an annual loss, it was not forbidden to make a profit; and, upon the facts found, its property would, upon the termination of its corporate existence, not be subject to the application of the *cy pres* doctrine, but would be sold and the surplus distributed among its members in accordance with the statutes relating to the dissolution of corporations without capital stock. *Held* that, under the circumstances, the property could not be said to be segregated from private and dedicated to public uses—a conclusion fortified by the present statutory provision (Chapter 245 of the Public Acts of 1925) that the personal property of an educational corporation shall not be exempt from taxation if, upon its dissolution, its members may "by any possibility receive any financial profit from their membership in the corporation."

Nor did the property of the school come within that portion of Chapter 109 of the Public Acts of 1921 granting exemption to the "buildings and the land on which they stand, belonging to

Pomfret School *v.* Pomfret.

and used exclusively for scientific, literary, benevolent or eccle-
siastical societies."

Argued October 5th, 1926—decided January 28th, 1927.

APPEAL by the plaintiff from the doings of the board
of relief of the town of Pomfret, taken to the Superior
Court in Windham County and tried to the court,
*Dickenson, J.;* judgment for the defendant, and appeal
by the plaintiff. *No error.*

*John F. Carpenter* and *Arthur L. Shipman,* with
whom, on the brief, was *Donald J. Warner,* for the
appellant (plaintiff).

*William A. King* and *John Hamilton King,* for the
appellee (defendant).

HINMAN, J.   The appellant, The Pomfret School,
claims exemption from taxation under either of two
provisions of Chapter 109 of the Public Acts of 1921,
in force at the time it filed its list of property with
the assessors in 1923.   The first of these exempts
"buildings or portions of buildings, and the land on
which they stand, exclusively occupied as colleges,
academies, churches, public schoolhouses or infirmaries,
with the land appurtenant to such infirmaries."   The
contention of the appellant is that it is an "academy"
within the meaning of that word as it is used in this
statute.   This provision had its origin in a statute
which exempted from taxation "houses, lands, or lots,
with the appurtenances thereof, belonging to the
United States, or to this State, or to any county, town,
city, borough, incorporated academy, college, religious
society, school, school society, or district," and which
also exempted from the poll tax instructors and stu-
dents in "incorporated academies."   Public Acts of
1819, Chap. 2, §§ 44, 48.

The word "academy" as used in connection with institutions for the education of youth has no precise significance, and the intent with which it was used in this statute can only be determined by a consideration of the meaning it had acquired by usage. While from an early day our laws provided for the establishment of public schools which should afford opportunity to secure an education in branches higher than those taught in the common schools, it was not until after the middle of the last century that such schools were provided to any considerable extent. Beginning in the latter part of the eighteenth century and extending through the first half of the nineteenth, the increasing need for such secondary education was mainly met by the establishment of a considerable number of institutions commonly known as academies. No comprehensive description of these institutions is available, but a reasonably accurate conception of their nature, function and scope may be derived from a study of our private laws and public reports, and from historical articles and catalogues of early academies. They were private institutions incorporated by special law until a general law was passed in 1838, and derived support in part from gifts and in part from tuition charged pupils attending them. Their main purpose was to provide secondary education and to prepare their students for college. Their charters contained no prohibition against the use of their property for private gain, but it is quite evident that it was not the design of those who founded or maintained them to so use it nor was it in fact so used.

In *Brunswick School* v. *Greenwich,* 88 Conn. 241, 90 Atl. 801, we considered the provision of the statute exempting academies from taxation as applied to a school which was conducted for purposes of profit and the course in which covered twelve years, from the

most primary instruction to entrance into college, and we there said (p. 246) that "to bring a building, or a part of a building, within the so-called exemption of the statute as an academy, it must be shown that (if not owned by the municipality) it is exclusively occupied for the maintenance of a school where instruction is given in grades superior to those of the ordinary primary school, and that the building so occupied is wholly sequestered from private use and is devoted to the use of the public." This does not mean, however, that the fact that some instruction is given in subjects ordinarily taught in the common schools will prevent an institution from being regarded as an academy, provided such instruction is merely incidental to a purpose to afford opportunities for secondary education. Many of the academies of the first half of the nineteenth century offered incidental instruction in branches taught in the common schools. The course of instruction offered by the Pomfret School is not such as, of itself, to remove the school from classification as an academy within the meaning of that term as used in the successive tax exemption statutes, including Chapter 109 of the Public Acts of 1921.

However, in order to entitle the property of the appellant to exemption it must also be shown that the buildings and land constituting such property are "sequestered from private, and devoted to the public, use." In ascertaining whether this essential element is present, the determinative questions are: First, is the property devoted to the public use; second, was the property so received and is it so held as to be dedicated to public benefit instead of to private advantage or gain? Is it "taken out of the body of private property and devoted exclusively to the common good?" *Brunswick School* v. *Greenwich, supra,* p. 244. These

questions must be answered in the affirmative if exemption is to be enjoyed.

1. The finding discloses that to be admitted to Pomfret School a boy must not be under twelve years of age and must have passed an examination given by what is known as the secondary board, made up of delegates from fifteen private schools. This examination includes Latin, and at times algebra, as well as the usual public grammar school studies. During the tax year in question the scholars numbered one hundred and twenty-two, and there were fifteen masters or teachers employed. All scholars are boarding scholars and are furnished, on the premises, with room, board, care and training, as well as instruction. The cost to each student is $1,350 a year, plus a half-yearly deposit of $40 for incidental expenses. "It is not the purpose of the school to give gratuitous instruction nor does it admit pupils except upon the terms heretofore described." These significant facts clearly indicate that, even more obviously than was the Brunswick School, the school in question is not a public institution "offering instruction therein to all comers, but it is a private school, calculated, manifestly, to interest only those who have the means and disposition to separate their children from the public schools." *Brunswick School* v. *Greenwich, supra,* p. 243. The situation presented is not in accord with the conception of public education and public benefit which is at the root of the exemption claimed—the performance, though by private persons, of functions which otherwise would devolve upon the State or municipal government. The school does not "concern a public charity" or purpose to "give 'free and gratuitous' instruction." *Loomis Institute* v. *Healy,* 98 Conn. 102, 140, 119 Atl. 31. It is not "intended primarily for scholars who are poor," nor is it an institution " 'where-

in all such persons of good moral character as desire to avail themselves of its advantages . . . are, at a moderate cost, . . . instructed in the arts and sciences.'" *Yale University* v. *New Haven*, 71 Conn. 316, 332 *et seq.*, 42 Atl. 87. There is absent the element of free tuition to pupils in the town or district, or of tuition charges so moderate to all as to afford an economical substitute for a high school or other secondary institution maintained by the municipality, which may be sufficient to bring some more or less privately operated schools within this reason for exemption from taxation. It is evident that the uses made of the property in question are not public in the sense contemplated in order to entitle it to exemption from taxation.

2. Is this property sequestered and dedicated to public uses? While it is found that pecuniary profit is neither an object of the school, nor an accomplishment since it operates at an annual loss, at least so far as the figures given (1923 and 1924) indicate, we find nothing in the record which appears to preclude the making of a profit; moreover, the existence or lack of such profit is not, of itself, a determining factor. *Brunswick School* v. *Greenwich, supra,* p. 243.

The finding states that most of the land and buildings were gifts to the corporation, but the conditions and stated purposes, if any, of such gifts do not appear. We may fairly assume that they were made subject to or were subjected to section ten of the corporation's charter, which provided that "if said corporation shall sell and convey its land, buildings, and other assets, the surplus remaining after the discharge of all its legal obligations shall be divided equally among the original corporators, their heirs and assigns." 13 Special Laws (1899) pp. 101, 102. In 1923 the charter was amended by a simple repeal of section ten, above

quoted. As a result, we find nothing in the charter as amended, nor in the general situation of the corporation as presented by the finding, to remove it from the application of the General Statutes relating to the dissolution of corporations without capital stock, §§3538 to 3544. Under §3539, upon dissolution, after sale of the corporation's property as therein provided for, the balance of the assets after payment of claims would be distributed, pro rata, among the members of the corporation. The only effect of the 1923 amendment would seem to be that, upon dissolution, the surplus is divisible among the then members instead of among the original corporators, their heirs and assigns. Surely there is not here disclosed such a segregation from private, and dedication to public, uses as the statute contemplates; neither would there be occasion or warrant, upon the facts disclosed, for the application of the *cy pres* doctrine to appropriate the property to public school or other public educational or charitable purposes. *Newton* v. *Healy*, 100 Conn. 5, 11, 122 Atl. 654.

In 1925 the General Assembly adopted a comprehensive substitute for the prior statutes relating to exemptions of property from taxation, being Chapter 245 of the Public Acts of that year. It was, presumably, framed and passed in the light of the legislative history of former statutes which it superseded, the gradual evolution and development of educational institutions, both public and private, and the judicial construction and application of prior statutes, including the *Brunswick School* case. Section 1, in subdivision 4, provides that, in order to render the personal property of educational institutions exempt from taxation, the corporations must be "so organized and their property so conveyed or held that their members may not by any possibility receive for their personal use any

of the corporate property in the event of a dissolution of the corporation, and that their members may not by any possibility receive any financial profit from their membership in the corporation," and that "if any of the income or profits or property owned by the corporation shall have been so accumulated or shall be so held as to be capable of distribution among its stockholders or members, . . . its property shall not be exempt." While of course this enactment can have no specific application to the present case, we think that the provision above mentioned may fairly be taken as an explicit legislative statement and affirmance of the conception prevailing in and under previous statutes, including the Act of 1921, and which was enunciated and applied in the *Brunswick School* case, of that dedication to public benefit which was requisite in order to entitle an educational institution to exemption from taxation. The appellant, as at present constituted and conducted, does not fulfil these requirements, and therefore is not entitled to the exemption which it claims.

The further claim of the appellant that its real estate is exempt as "buildings and the land on which they stand, belonging to and used exclusively for scientific, literary, benevolent or ecclesiastical societies," is disposed of by the unattacked finding of the trial court that none of the property was used for scientific or literary purposes except in connection with, and incidental to, the operation of the school, that the property belonged to the school, and was not owned or used by any scientific or literary society, and by its conclusion, fully warranted by the subordinate facts, that the plaintiff is not a scientific or literary society within the meaning of Chapter 109 of the Public Acts of 1921.

There is no error.

In this opinion the other judges concurred.