In this opinion the other judges concurred.

THE STAMFORD JEWISH CENTER, INC., *vs.* TOWN OF STAMFORD (578).

THE STAMFORD JEWISH CENTER, INC., *vs.* TOWN OF STAMFORD (579).

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 9th—decided August 8th, 1933.

*George Dimenstein* and *Joseph P. Zone,* with whom was *Michael Wofsey,* for the plaintiff.

*Thomas J. Ryle,* for the defendant.

HAINES, J. The stipulation shows the plaintiff to be a corporation without capital stock, organized May 22d, 1914, under the statute law of this State. The purposes of its organization were stated at length in the second of its Articles of Association and in Articles 2 and 3 of its By-laws, all as appears in the footnote hereto. All of its property both real and personal is now used exclusively for charitable, educational and

religious purposes, including four bowling alleys for the use of which a charge is made, with no accruing profit to the organization, an auditorium used by organizations which are members of the plaintiff organization, admission fees sometimes being charged, but no part of such fees being paid to the plaintiff, and a gymnasium and a swimming pool for the exclusive use of plaintiff's members, without charge. The funds with which all the property of the plaintiff was acquired were provided by gifts contributed by the general pub-

### ARTICLES OF ASSOCIATION

ARTICLE 2. The purposes for which said corporation is formed are the following, to wit; to conduct, maintain, operate and manage a school for the education of boys, and girls of the Jewish faith in the Hebrew language, literature and culture, which subjects shall be taught in the Hebrew language only.

To conduct, maintain, operate and manage classes for the education of boys and girls of the Jewish faith in the Hebrew language, literature and culture, which subjects may be taught in any language.

To conduct, maintain, operate and manage club rooms or meeting halls wherein any educational, religious or benevolent society, lodge or association may meet for the transaction of its business or for the doing of any and all other acts incident to the objects and purposes of such society or association.

To purchase, take by gift, bequest or devise, or otherwise acquire any real or personal property as the corporation shall deem advisable; and to erect, construct, maintain, improve, rebuild, alter, enlarge, repair, raise and remove any building or buildings on the property of the corporation.

To do all and everything necessary, suitable, convenient or proper for the accomplishment of any of the purposes, or the attainment of any one or more of the objects herein enumerated, or incidental to the powers herein named, with all the powers now or hereafter conferred by the laws of the State of Connecticut upon corporations without capital stock.

### BY-LAWS

ARTICLE 2                                              OBJECTS

Sec. I. The objects of The Stamford Jewish Center, Incorporated shall be as defined in the Articles of Association, dated May 24, 1914; and in addition thereto, to conduct religious services for children and to teach children of the Hebrew School the Hebrew

lic for the stated purposes of the plaintiff. The funds for the maintenance and operation of the plaintiff and all its activities were and are obtained in part by dues paid by members and in part as a member agency of the Stamford Community Chest, Inc., and all its funds are used exclusively for its enumerated purposes. None of the plaintiff's officers or employees have received or do now receive, any pecuniary profit from the organization save as reasonable compensation for services rendered to it. The original Articles and By-laws are silent as to the enjoyment of any such pecuniary profit in the future.

Lists of its property were filed by the plaintiff with the assessors of Stamford in October, 1931, and October, 1932, as prescribed by law and similar lists were filed with the tax commissioner, claiming all such property was exempt from taxation under the statute. General Statutes, Rev. 1930, § 1163. Upon the refusal of the assessors to allow the exemption the plaintiff appealed to the board of relief where the action of the assessors was confirmed and the plaintiff then appealed to the Superior Court where both cases were then reserved for consideration by this court. The answers to all the questions submitted to us may be found in the solution of a single question: Is the plaintiff's property exempt from taxation under the provisions of the statute?

The defendant's argument against the exemption is based upon two contentions: (1) That the speci-

traditions; and to conduct, maintain, operate and manage recreational, philanthropic, educational and social facilities and activities.

ARTICLE 3          MEMBERSHIP
Sec. I. Any person of good moral character may become a member and shall have all the privileges of this Association except as the Constitution and By-Laws may hereinafter limit, but only members of the Jewish faith, twenty-one (21) years or more of age, shall be entitled to vote or hold office.

fied purposes of the plaintiff organization show that it was not "organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes" within the requirements for exemption specified in subsection (7) of § 1163, and (2) that it does not appear that "any officer, member or employee" shall not "at any future time receive any pecuniary profit . . . except reasonable compensation for services" within the purpose and intent of (a) of subsection (7) of § 1163.

The claim of the plaintiff that it is a corporation within the class above specified, must be examined in the light of the underlying theory and intent of our legislation in exempting certain corporations from the payment of taxes. In 1902 (General Statutes, § 2315) these exemptions were granted under specified conditions to colleges, academies, churches, *public* schoolhouses, infirmaries and parsonages as well as buildings used exclusively for scientific, literary, benevolent or ecclesiastical purposes. We said of these provisions that their object was not to exempt private property used for private purposes, but property, public or private, which has been sequestrated or devoted to the service of the public. Churches and colleges have always been considered as ministering to public use; *Brunswick School* v. *Greenwich,* 88 Conn. 241, 243, 245, 90 Atl. 801; *Pomfret School* v. *Pomfret,* 105 Conn. 456, 459, 136 Atl. 88; and of somewhat similar provisions in General Statutes, Rev. 1888, § 3820: "This . . . does not exempt any individuals from the burden of taxation that is common to all; it does not grant to one, particular privileges denied to others; it declares that lands and buildings sequestrated to public uses, *i. e.* taken out of the body of private property and devoted exclusively to the common good, from which no individual can derive any profit, are not tax-

able property. And this has been, not the exception, but the rule from the foundation of our government." *Yale University* v. *New Haven,* 71 Conn. 316, 329, 42 Atl. 87.

Under Chapter 109 of the Public Acts of 1921, which exempted "academies" as well as "public schoolhouses," a private school claimed exemption as an "academy" and we held it incumbent upon the plaintiff to establish that its property was " 'taken out of the body of private property and devoted exclusively to the common good.' " *Pomfret School.* v. *Pomfret,* 105 Conn. 456, 459, 136 Atl. 88. It was found as to that school that " 'it is not the purpose of the school to give gratuitous instruction nor does it admit pupils except upon terms,' " and a charge was made for each pupil. We said it was not a public institution, "offering instruction therein to all comers, but it is a private school, calculated, manifestly, to interest only those who have the means and disposition to separate their children from the public schools. . . . The situation presented is not in accord with the conception of public education and public benefit which is at the root of the exemption claimed—the performance, . . . by private persons, of functions which otherwise would devolve upon the State or municipal government." And we added, "It is evident that the uses made of the property in question are not public in the sense contemplated in order to entitle it to exemption from taxation." *Pomfret School* v. *Pomfret, supra,* pp. 460, 461. It appeared in that case that pecuniary profit was not sought or obtained by the operation of the school, yet there was nothing in its constitution to preclude it from making a profit. The exemption was denied.

In a later case the plaintiff—a non-stock corporation—was conducting a boarding school for girls and

a tuition fee was charged, and there was no provision in its charter precluding the distribution of profits among the members of the corporation, and we said of that school "it lacks attributes indicative of devotion to such public use as the statute contemplates," and that there was not that segregation of property and dedication to public uses which entitled it to the exemption it sought. *Female Academy* v. *Darien,* 108 Conn. 136, 139, 142 Atl. 678.

We discover in the statute now under consideration, General Statutes, § 1163, though differing in phraseology from previous enactments, a consistent adherence to the underlying theory upon which tax exemptions have always been based, viz.: a purpose to serve the interests of the general public and a sequestration of the property of the corporation to the use of the public, and we deem the considerations involved in the opinions referred to, have full bearing in the present case. The same requirements were recognized and applied in the still more recent case of *Canterbury School, Inc.* v. *New Milford,* 111 Conn. 203, 149 Atl. 685.

Considered as a school, this is not a public one, "offering instruction therein to all comers." *Brunswick School* v. *Greenwich, supra,* p. 243. It does not discharge educational functions which would otherwise rest upon municipal or other governmental agencies, but membership in and the privileges of the corporation except voting privileges, are open to all persons of good moral character. We do not overlook, however, one other purpose of the corporation expressed in its by-laws, viz.: to conduct and maintain "recreational, philanthropic, educational and social facilities and activities," obviously having reference to the furnishing of club rooms and meeting halls for the benefit of "any educational, religious or benev-

olent society, lodge or association." Though the stipulation shows that no charge has been made to "organizations which are members" of the corporation, for the use of the auditorium, the record discloses no provision in the Articles or elsewhere as they stood before 1932, which prohibited the rental of these quarters and the realization of income and profit therefrom; nor anything which bound the corporation to apply this profit or surplus income to purposes specified in the exemption statute, and prevent their application to the financial benefit of the officers and members.

So far as the appeal of 1931 is concerned therefore, we must hold that the denial of exemption was justified.

In 1932 and before the second appeal, the plaintiff filed an amendment to its Articles binding it to apply any surplus income, first to the reduction of its indebtedness, second to the reduction of the cost of memberships, and third to an equal distribution between Congregation Agudath Sholem and Temple Beth El or their respective successors, for religious and educational purposes, or if neither be existent, or if they refuse the gift, then to the Connecticut State Board of Charities, and making the same provision for the disposition of its assets in the event of the dissolution of the corporation.

It appears of record that this amendment was approved at a duly warned meeting of the corporation on May 8th, 1932, that a certificate thereof was filed in the office of the Secretary of the State on September 1st, 1932; it was approved by the secretary and was recorded as required by statute in the office of the town clerk of Stamford on October 15th, 1932. It follows that the amendment did not become operative

for a considerable time after October 1st, the date as of which the last list was filed (General Statutes, § 3498). The benefit of the amendment had not accrued to the plaintiff and the considerations which governed the first list, rendered the plaintiff's property taxable October 1st, 1932.

The declared purposes of this amendment are the application of all its property, together with any and all surplus income, to certain religious and educational purposes together with the maintenance of recreation, philanthropic and social facilities and activities. So long as this amendment stands, all its funds are thus appropriated and there is no probability of personal pecuniary profit to its officers or members. With the amendment in force, all the property of the corporation is sequestered and dedicated to the uses specified, and these are within the language and contemplation of the statute of exemption.

The defendant urges that the statutory power to further amend its Articles, enables the corporation to change its status at any time, and apply some part of its funds to the pecuniary benefit of the officers and members. If this possibility were held to deprive the corporation of the benefit of the exemption to which, as now organized, it is entitled, then the same power of amendment given to the numerous corporations of a strictly religious, educational, charitable or scientific character which are formed under the same statute law, would deny them exemption, and this would clearly be contrary to the purpose of the legislature in providing exemptions from tax.

This corporation is now, and so long as at present organized, will continue to be, entitled to exemption from taxation under the statute quoted.

A sufficient answer to all the questions propounded

to us is that upon these two appeals no exemption can be allowed.

No costs will be taxed in this court.

In this opinion the other judges concurred.