THE CONNECTICUT JUNIOR REPUBLIC ASSOCIATION, INCORPORATED *vs.* THE TOWN OF LITCHFIELD.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 5th—decided July 27th, 1934.

*George H. Day,* with whom was *Lillian L. Malley,* for the plaintiff.

*James E. McKnight,* for the defendant.

HINMAN, J. The questions upon which advice is desired are: (a) Whether the plaintiff is a Connecticut corporation organized exclusively for educational or charitable purposes or both, and (b) whether the real property described in the agreed statement of facts is the real property of the plaintiff, within the meaning of subsection 7 of § 1163 of the General Statutes; also (c) whether the real and personal property upon which the assessment was levied from which this appeal is taken is exempt from taxation by the defendant town under the provisions of said subsection 7.

The relevant provision of the statute under which the plaintiff claims exemption from taxation reads as follows: "Sec. 1163. The following-described property shall be exempt from taxation: . . . (7) . . . the real property of, or held in trust for, a Connecticut corporation organized exclusively for scientific, educational, literary, historical or charitable purposes or for two or more such purposes and used exclusively for carrying out one or more of such purposes and the personal property of, or held in trust for, any such corporation, provided (a) any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof, except reasonable compensation for services in effecting one or more of such purposes or as a proper beneficiary of its strictly charitable purposes. . . ."

It is conceded that the plaintiff is conducting an educational institution. In some aspects it might also be regarded as exhibiting characteristics of a charitable enterprise. *St. Bridget Convent Corporation* v. *Milford,* 87 Conn. 474, 88 Atl. 881; *Stoughton* v. *Hartford,* 85 Conn. 674, 678, 84 Atl. 95. The contentions urged in justification of refusal to accord it exemption from taxation are: first, that the uses to which the property is devoted are not public in the sense contemplated in order to entitle it to exemption; second, that the real estate is not "the real property of . . . a Connecticut corporation," within the meaning of the statute.

As to the first, it has been settled in the several cases in which the statute and its predecessors have been under consideration that in order to entitle property such as that of the appellant to exemption from taxation it must be shown that it is sequestered from private, and devoted to public, use. In order to satisfy this prerequisite it must appear that the property is so held as to be dedicated to public benefit instead of to private advantage or gain, and that it is devoted to the public use. *Brunswick School* v. *Greenwich,* 88 Conn. 241, 90 Atl. 801; *Pomfret School* v. *Pomfret,* 105 Conn. 456, 459, 136 Atl. 88; *Female Academy* v. *Darien,* 108 Conn. 136, 142 Atl. 678; *Canterbury School, Inc.* v. *New Milford,* 111 Conn. 203, 149 Atl. 685; *Stamford Jewish Center, Inc.* v. *Stamford,* 117 Conn. 379, 385, 168 Atl. 6; *Masonic Building Asso.* v. *Stamford,* 119 Conn. 53, 174 Atl. 301. One of the attributes essential to such dedication to public use—that no individual can derive any profit from the property or its use, recognized in *Brunswick School* v. *Greenwich, supra,* p. 244—has since been accorded legislative expression in what is now proviso (a) of subsection 7, above quoted. *Pomfret School* v.

*Pomfret, supra,* p. 462. This condition is satisfied by the provision in the plaintiff's amended articles of association (adopted in 1930) Article II (c) that "no officer, member or employee thereof shall ever receive any pecuniary profit from the operations of said corporation except reasonable compensation for services in effecting its purposes," and by the agreed fact that no such pecuniary profit is received.

It is claimed by the defendant, however, that the institution conducted by the plaintiff, like the Brunswick and Pomfret schools and the Female Academy involved in the cases pertaining to them (*supra*), is not a public institution but "a private school, calculated, manifestly, to interest only those who have the means and disposition to separate their children from the public schools." *Brunswick School* v. *Greenwich, supra,* p. 243. Comparison of the facts significant of the nature of these other schools with those descriptive of the plaintiff's institution effectively disposes of the attempted analogy. The facts pertaining to those schools clearly show them to be designed and maintained for children of persons having the ample means required to pay generous compensation for luxurious living accommodations and the special facilities for instruction, recreation, and other characteristics of a select private school in the modern sense. On the other hand, the plaintiff's institution significantly accords "with the conception of public education and public benefit which is at the root of the exemption claimed—the performance, though by [a private corporation], of functions which otherwise would devolve upon the State or municipal government." *Pomfret School* v. *Pomfret, supra,* p. 460. It appears from the agreed statement that the general funds upon which the plaintiff depends for its operating expenses are derived from contributions from the general public

110

and from community chests of sundry cities in Connecticut, income from invested endowment funds, payment toward the board of children from parents, charitable organizations, and public authorities, and a small amount from the sale of farm produce and miscellaneous items. The plaintiff receives in its institution boys between fourteen and eighteen years of age whose conduct and care present some special problem in the home, the school, or the community, and who are in need of guidance. It is nonsectarian in character, and its population includes all denominations. Preference is given to residents of Connecticut and never more than four or five at a time come from other States. The number of children in its care is limited by its physical capacity to one hundred, and the average number during 1930 was eighty-six. Approximately forty per cent come through the board of child welfare of the State of Connecticut or charitable child-placing agencies, because they lack homes or because of improper home conditions or improper guardianship, approximately ten per cent through juvenile courts without formal commitment, and the remainder through voluntary direct application of parents at the suggestion of school principals, child-guidance clinics, and other agencies. They are drawn generally from under-privileged economic classes, and the training given them is with the purpose of making them useful citizens instead of public charges. While an attempt is made to secure agreement of the parent, some charitable organization, county commissioners or others to pay $25 per month for the support of a child, less than that sum is paid for many and there are always boys who are maintained out of the plaintiff's general funds without any reimbursement. The average annual per capita cost of the service rendered is approximately $600.

The plaintiff maintains a school in the sixth, seventh, and eighth grades and a trade school in which instruction in certain trades is given in conjunction with appropriate academic subjects. The students do all the baking, cooking, and laundry, operate the farm, and in general do all of the work of the institution under staff guidance. Practical applied training in civics and economics is given by the method of requiring each boy to work, for which he is paid in the private token currency of the institution which he uses to pay for what he receives, and by its unique system of student government which seeks to impose on each boy the maximum amount of responsibility for his own conduct and the conduct of the community. The students pass their own laws and execute them through officials elected by them. The institution is subject to inspection and is inspected periodically by the board of child welfare of the State department of public welfare, under § 1911 of the General Statutes.

The foregoing attributes are ample to confer upon the institution the public character appropriate and essential to exemption from taxation. "Exemptions are made, and can be made lawfully, only in recognition of a public service performed by the beneficiary of the exemption; . . . they are granted in aid of the accomplishment of a public benefit and for the advancement of the public interest. It is in recognition of their position as an agency in the doing of things which the public, in the performance of its governmental duties, would otherwise be called upon to do at its own expense, or which ought to be done in the public interest and without private intervention would remain undone. *Yale University* v. *New Haven,* 71 Conn. 316, 332, 42 Atl. 87. In the fullest sense of the word, the exemptions are given for the assistance and help of the private endeavor in its effort to advance

the public interest or to perform some share of the public governmental duty. This is true not only theoretically but practically. The extent of the public service, and of that service within the range of governmental duty, which is performed by private beneficiaries operating through the medium of tax-exempted institutions and corporations is enormous, and the importance and value of it in its purely public aspects incalculable. The amount of taxes which are lost to the State and its political subdivisions by reason of exemptions are of trifling consequence as compared with the sums coming from private sources which are spent for the public weal. They are trifling as compared with those spent for purposes governmental in their character, and which, but for the private expenditure, would become a charge upon the public treasury if the governmental duty of an enlightened modern State is to be performed." *Corbin* v. *Baldwin,* 92 Conn. 99, 107, 101 Atl. 834. We hold, therefore, that the plaintiff is organized for and is exclusively serving public educational or educational and charitable purposes within the meaning of § 1163(7) of the General Statutes.

The defendant's further contention is that, regardless of whether or not the plaintiff is a public educational or charitable institution, the real estate occupied and used by it is not "the real property of . . . a Connecticut corporation" within the meaning of the statute. This real estate was devised by Mary T. Buell, of Litchfield, to The George Junior Republic Association of New York with a precatory provision that it be used as a home for children. It appears from the record that this association is a New York charitable corporation for the establishment and maintenance of "an institution for the reception and education of children in need of a home." It has long

maintained, in Freeville, New York, an institution having the same general characteristics as those of the plaintiff, as above outlined.

In 1904 the New York association opened, on the devised land in Litchfield, the Connecticut George Junior Republic, and it was at first administered by a local committee which, as a voluntary association, solicited gifts from Connecticut residents for its support, and conducted it in accordance with the principles of the parent institution in New York State. In 1909 this voluntary association was incorporated under Connecticut law as a corporation without capital stock, the purpose declared in its amended certificate of incorporation being "(a) To construct, equip, maintain and operate a school and boarding home in Litchfield or elsewhere in the State of Connecticut of the type known as an opportunity school for the instruction, education and training of problem boys and girls according to the system of juvenile self-government originated by William R. George." This corporation, which is the present plaintiff, thereafter continued to conduct the institution on the land belonging to the New York association until 1915, when the latter deeded the real estate to the Connecticut corporation. The deed conveyed all the real estate left to the grantor by the will of Mary T. Buell to the plaintiff "its successors and assigns, in trust, as long as it may obey the purposes expressed in . . . the will . . . and as long as [the grantee] shall continue its existence for the uses and purposes as outlined in the preamble of the constitution of the National Association of Junior Republics, but if at any time it shall fail to so use said property for said purposes . . . then the property hereby conveyed shall revert to this grantor, or its successors, with all changes and improvements thereon." The plaintiff has since continued to conduct

the institution in accordance with the terms of the will, the deed, and its own certificate of incorporation. The specific claim of the defendant is that by reason of the right of reverter to the New York corporation, grantor, upon failure of the plaintiff-grantee to comply with the conditions of the deed, the plaintiff's title is insufficient to qualify it for tax exemption under the statute. While the expression "in trust" is included in the deed, the use of those words "is by no means conclusive of [an] intention to create a trust, nor did it of necessity operate to create one." *Birge* v. *Nucomb,* 93 Conn. 69, 74, 105 Atl. 335. The intent of the grantor obviously was to convey the property to the plaintiff for use by it in carrying out the objects of the corporation, and for that purpose to unite both the legal and equitable title in the grantee, rather than to make a conveyance strictly in trust. *Pierce* v. *Phelps,* 75 Conn. 83, 85, 52 Atl. 612. The effect of the deed was to vest in the plaintiff a determinable fee. Here, as in *First Universalist Society* v. *Boland,* 155 Mass. 171, 174, 29 N. E. 524, the terms of the deed "do not grant an absolute fee, nor an estate on condition, but an estate which is to continue till the happening of a certain event, and then to cease. The event may happen at any time, or it may never happen. Because the estate may last forever, it is a fee. Because it may end on the happening of the event, it is what is usually called a determinable or qualified fee." See also *City National Bank* v. *Bridgeport,* 109 Conn. 529, 540, 147 Atl. 181; *Battistone* v. *Banulski,* 110 Conn. 267, 147 Atl. 820. Until breach of the condition or the happening of the determining event, the proprietor of a determinable fee has all the rights and privileges of an owner in fee simple. "After such a grant no right . . . or possession remains in the grantor; all the estate is in the grantee notwithstanding the qualifica-

tion." *Lyford* v. *Laconia*, 75 N. H. 220, 225, 72 Atl. 1085, 22 L. R. A. (N. S.) 1062; *North* v. *Graham*, 235 Ill. 178, 85 N. E. 267; 23 R. C. L. 1104; 1 Tiffany, Real Property (2d Ed.) 336. The grantor retains, at most, a mere possibility of reverter should the event happen upon which the fee is limited. *Loomis* v. *Heublein & Bro.*, 91 Conn. 146, 149, 99 Atl. 483. The holder of a determinable fee is to be regarded as the owner for purposes of taxation. *Connecticut Spiritualist Camp-Meeting Asso.* v. *East Lyme*, 54 Conn. 152, 155, 5 Atl. 849. It follows that it is to be similarly regarded with reference to exemptions from taxation, in the absence of statutory provisions to the contrary. Clearly, the real estate here in question falls within the statutory designation as "real property of . . . a Connecticut corporation."

Neither of the objections interposed by the defendant are sustainable and the property of the plaintiff is entitled to exemption from taxation.

Our answer to each of the questions reserved is "Yes."

No costs will be taxed in this court.

In this opinion the other judges concurred.