RED TOP, INC. *v.* BOARD OF TAX REVIEW OF THE TOWN OF LEDYARD

COTTER, C. J., LOISELLE, BOGDANSKI, SPEZIALE and HEALEY, Js.

Argued February 14—decision released July 1, 1980

*Ralph P. Dupont,* with whom was *Bonita C. Frasure,* for the appellant (plaintiff).

*Thomas B. Wilson,* for the appellee (defendant).

SPEZIALE, J. The issue on this appeal is whether certain property owned by the plaintiff, Red Top, Inc., a Connecticut corporation, and used in connection with the famed Harvard-Yale Regatta and other rowing competitions, is exempt from taxation under § 12-81 (7) of the General Statutes as "property used for scientific, educational, literary, historical or charitable purposes."

The property is located in the town of Ledyard. The town tax assessor included the property on the grand lists of the town for 1975, 1976, and 1977. The plaintiff appealed to the defendant, board of tax review, seeking exemption from taxation under § 12-81 (7) of the General Statutes. From the denial of its appeal, the plaintiff appealed to the Court of Common Pleas in New London County, where the appeal was referred to a state referee, *Hon. George E. Kinmonth, Jr.,* who dismissed the appeal and rendered judgment for the defendant. After certification was granted, the plaintiff appealed to this court.[1]

The finding[2] reveals that the plaintiff owns an athletic facility, known as Red Top, in the town of Ledyard. This facility consists of approximately 25.55 acres of land, buildings, piers, and certain personal property. At all times pertinent to this case the buildings and grounds have been maintained with funds donated to Harvard or provided from the income of endowment funds which were given subject to the requirement that they be used for the exclusive benefit of rowing and for the maintenance of Red Top. There is no commercial activity, either at Red Top or elsewhere, in connection with Harvard rowing; no admission or other fee has been charged by Harvard or Yale at any time. No income has been derived by Red Top, Inc., by reason of the ownership and maintenance of the property in question.

The above-described realty and personalty was separately assessed by the Ledyard tax assessor

[1] The defendant had filed a cross appeal, which was withdrawn during oral argument before us.

[2] Because the finding was filed prior to July 1, 1979, the rules for the Supreme Court effective July 1, 1978 apply. Practice Book, 1978, § 3166 (as amended).

on the grand lists from 1973 to 1977, and the total assessed value was $386,410.[3] Between July 1, 1976, and January 1, 1978, the plaintiff paid, under protest, local property taxes[4] totaling $36,063, including interest and late charges, and then appealed to the defendant board of tax review.

Under § 12-81 (7) of the General Statutes property is exempt if it is "the real property of . . . a Connecticut[5] corporation organized exclusively for scientific, educational, literary, historical or charitable *purposes* or for two or more such purposes and *used* exclusively for carrying out one or more of such purposes and the personal property of . . . any such corporation, provided (a) any officer, member or employee thereof does not receive or at any future time shall not receive any pecuniary profit from the operations thereof . . . ."[6] (Footnote and emphasis added.)

---

[3] Although these findings regarding the assessment were for the years 1973–1976, this appeal involves only the plaintiff's claimed exemption from taxation on the grand lists of 1975, 1976 and 1977.

[4] The plaintiff is exempt from federal taxation as an organization described in § 501 (c) (3) of the Internal Revenue Code.

[5] In 1978, the General Assembly amended § 12-81 (7) of the General Statutes and repealed the domestic corporation requirement by deleting the word "Connecticut." Public Acts 1978, No. 78-296, § 1.

[6] For discussion of the history of Connecticut legislation exempting from taxation property used exclusively for scientific, educational, literary, historical or charitable purposes, see *Forman Schools, Inc.* v. *Litchfield*, 134 Conn. 1, 2–4, 54 A.2d 710 (1947); *Institute of Living* v. *Hartford*, 133 Conn. 258, 261–64, 50 A.2d 822 (1946); *Masonic Building Assn.* v. *Stamford*, 119 Conn. 53, 57–59, 174 A. 301 (1934); *Stamford Jewish Center, Inc.* v. *Stamford*, 117 Conn. 379, 383–85, 168 A. 5 (1933); *St. Bridget Convent Corporation* v. *Milford*, 87 Conn. 474, 88 A. 881 (1913). See also Warren, Krattenmaker & Snyder, "Property Tax Exemptions for Charitable, Educational, Religious and Governmental Institutions in Connecticut," 4 Conn. L. Rev. 181, 185–87, 189–93.

The trial court concluded that the plaintiff did not qualify for an exemption under § 12-81 (7) because, although it satisfied the requirement that no officer, member, or employee receives or shall receive any pecuniary profit from the operations of the corporation, the plaintiff did not meet two other requirements of § 12-81 (7), namely, (1) that it be organized exclusively for scientific, educational, literary, historical or charitable purposes; and (2) that the property held by it be used exclusively for carrying out one or more of these purposes. We disagree and hold that the court erred in concluding that the plaintiff did not qualify for an exemption under § 12-81 (7).

A trial court's conclusions are tested by the finding, and a conclusion cannot stand if it is legally or logically inconsistent with the facts found or if it involves some erroneous rule of law applicable to the case. *State* v. *Cutler,* 180 Conn. 702, 703, 433 A.2d 988 (1980); *Winchester* v. *Connecticut State Board of Labor Relations,* 175 Conn. 349, 353, 402 A.2d 332 (1978).

### AUTHORIZED PURPOSES UNDER § 12-81 (7)

The only finding of fact made by the trial court regarding the purposes of the plaintiff corporation is: "The Corporation is organized exclusively to receive and administer funds for educational, scientific and charitable purposes, within the meaning of Section 12-81 (7) of the General Statutes of the State of Connecticut, as amended; the sole object and purpose being to provide educational, scientific, athletic and recreational programs and facilities in conjunction with facilities maintained and programs established to advance the objects and purposes of the President and Fellows of Harvard Col-

lege . . . ." The above language is that contained in the plaintiff's certificate of incorporation, and it is in this document, the charter of a corporation, that the purposes for which a corporation is organized are to be found. *Waterbury First Church Housing, Inc.* v. *Brown,* 170 Conn. 556, 561, 367 A.2d 1386 (1976); see also *St. Bridget Convent Corporation* v. *Milford,* 87 Conn. 474, 482, 88 A. 881 (1913). Because the finding of fact made by the trial court as to the purposes for which the plaintiff was organized is inconsistent with its conclusion that the plaintiff was not organized exclusively for one or more of the purposes set forth in § 12-81 (7), we consult the trial court's memorandum of decision.[7]

The memorandum of decision reveals that the trial court determined that a requirement for tax exemption under § 12-81 (7) was that the corporation be an "educational institution." In its memorandum of decision the trial court stated that "it would be extending one's imagination to find that the plaintiff is an educational institution, under Connecticut law." This construction of § 12-81 (7) is erroneous. The fact that the plaintiff is not an educational *institution* does not in any way affect its eligibility for tax exemption as a corporation organized for educational purposes under § 12-81 (7). Such requirement, in effect until 1927; see Public Acts 1925, c. 245, § 4; see also Public Acts 1921, c. 109, § 1; was altered by Public Acts 1927, c. 319, § 1, which, inter alia, replaced the "educational institution" requirement with the require-

_____

[7] We consult the memorandum of decision to better understand the trial court's decision, to interpret its finding, and to determine the grounds on which it rested its judgment. *New Haven Water Co.* v. *North Branford,* 174 Conn. 556, 562, 392 A.2d 456 (1978); *Parham* v. *Warden,* 172 Conn. 126, 130, 374 A.2d 137 (1976).

ment that one seeking tax exemption be a "Connecticut corporation" organized exclusively for educational purposes. If the other statutory requirements were met, § 12-81 (7) required only that the plaintiff be a Connecticut corporation, not an educational institution, for its property to be exempt from taxation.

From the trial court's finding of facts it is evident that the purposes for which the plaintiff was organized fall squarely within the statutorily delineated purposes. The trial court found as a fact that the "sole . . . purpose [of the plaintiff is] to provide educational, scientific, athletic and recreational programs and facilities in conjunction with facilities maintained and programs established to advance the objects and purposes of the President and Fellows of Harvard College . . . ." The inclusion of the terms "recreational" and "athletic" does not, as the defendant argues, render the plaintiff organized for a purpose not enumerated in § 12-81 (7). Inasmuch as education is not limited to classroom instruction, but encompasses athletic and recreational activities related thereto; see *Arnold College* v. *Milford,* 144 Conn. 206, 210, 128 A.2d 537 (1957); the inclusion in the plaintiff's charter of these words does not have the effect claimed by the defendant.[8] See *Stamford Jewish Center, Inc.* v. *Stamford,* 117 Conn. 379, 385–87, 168 A. 5 (1933)

---

[8] From the facts found by the trial court, the plaintiff corporation is far from being a fraternal social organization such as the one denied exemption in *Masonic Building Assn.* v. *Stamford,* 119 Conn. 53, 174 A. 301 (1934). The record does not reflect that the nonpecuniary benefits which are hallmarks of such organizations would inure to the benefit of members of the plaintiff corporation. See Warren, Krattenmaker & Snyder, "Property Tax Exemptions for Charitable, Educational, Religious and Governmental Institutions in Connecticut," 4 Conn. L. Rev. 181, 240.

(inclusion of the word "recreational" in stated purposes of the corporation whose property was otherwise exempt from taxation under § 12-81 (7) as being used for charitable purposes did not render that property taxable).

Therefore, the trial court's conclusion that the plaintiff does not meet the § 12-81 (7) requirement that it be organized exclusively for scientific, educational, literary, historical or charitable purposes cannot stand.

USE OF REAL PROPERTY UNDER § 12-81 (7)

Not only must the plaintiff be organized exclusively for the purposes enumerated in § 12-81 (7), but also the property for which tax exemption is sought must be used exclusively for carrying out such purposes. Both conditions must be met to secure exemption. *New Canaan Country School, Inc.* v. *New Canaan,* 138 Conn. 347, 349, 84 A.2d 691 (1951). The trial court concluded that the plaintiff did not meet the requirement of § 12-81 (7) that the real property held by it be used exclusively for carrying out one or more of the statutorily enumerated purposes. Here again, the court's conclusion is tested by its finding of facts. *State* v. *Cutler,* 180 Conn. 702, 705, 433 A.2d 988 (1980).

The trial court found that Red Top is used exclusively as a Harvard rowing camp, including docks, boat houses, buildings for housing and feeding of Harvard student crews and coaches, caretaker facilities, and other uses auxiliary thereto, including open space, and buffer zones consisting of ledge, wooded land, and swampy or low lying areas. Further, it found that from time to time Red Top has been used to test crew training techniques and

to measure human endurance in general. It also found that during the time in issue, Red Top was maintained as a training facility for the members of the Harvard crews and for no other purpose whatsoever. It also found that normally thirty-six intercollegiate oarsmen in the varsity, junior varsity, and freshmen intercollegiate programs go to the facilities at Red Top in the spring and that, occasionally, the varsity lightweight crew, consisting of nine oarsmen, goes to Red Top. Additionally, there are four or five managers and two or three coaches. When the crew goes to Red Top, it does so during the final days of the examination period.

Two of Harvard's six rowing ergometers, used to measure and evaluate the performance of oarsmen, are brought with the crew to Red Top when it trains; none of the ergometers is kept there permanently. Of the twenty-four or twenty-five boats that Harvard owns, none is permanently located at Red Top; the crew takes eight to ten racing boats, and two to three coaching launches and other racing equipment to Red Top.

For the years in question in this appeal, the property was used as follows: In 1975, the Harvard-Yale Regatta was held on June 7, and for one week prior thereto the Harvard crews lived and trained at Red Top; a race against the University of Washington was held on June 21, and the crews remained at Red Top for the two-week interim between the two races in order to prepare for the second race. In 1976, the Regatta was held on May 22, and the crews spent one night and one day at Red Top in the preparation and conduct of the Regatta. In 1977, in addition to the Regatta, a race was held between Harvard and the United States Naval

Academy at Red Top on or about June 15, and the Harvard crew spent approximately ten days practicing at Red Top prior thereto. In general, more than forty Harvard crew members, plus coaches, trainers, cooks, and other personnel use Red Top for approximately two to three weeks just prior to the Regatta while special training is given the crews in preparation for the race. Except for the approximately three to four week period that Red Top is used for training purposes, the buildings located there are normally closed.

The conclusion of the trial court that the plaintiff does not meet the "used exclusively" requirement of § 12-81 (7) is inconsistent with the facts found and cannot stand. *State* v. *Cutler,* supra.

The defendant does not dispute that athletic facilities may be exempt from taxation in the proper case. We noted in *Arnold College* v. *Milford,* supra, 210, that "[i]t is well established that the exemption granted is not limited to the buildings used for educational purposes in the limited and restricted sense. It extends to all of the property the use of which is incidental to education, including campuses and playing fields." Rather, the defendant claims that the conclusion of the trial court is supported by the facts found because Red Top is not used for the vast majority of the year, and, when it is used, its relationship to the overall athletic program of Harvard is de minimis. The defendant's claim is that the sporadic, infrequent use to which Red Top is put by a relatively small number of students disqualifies the property from tax exemption. We disagree.[9]

---

[9] Were we to adopt the defendant's theory of the meaning of "used exclusively," the exemption under General Statutes § 12-81 (7) would turn on whether a sufficient percentage of the student popula-

Section 12-81 (7) requires only that the property be used exclusively for one or more of the statutorily enumerated purposes. The statute does not require that educational activities be carried on continuously on a piece of property for it to come within the term "used exclusively" for carrying out an educational purpose. See *Arnold College* v. *Milford,* supra, 211. Use of property during the summer months has been sufficient for exemption under this section. *Charter Oak Council, Inc., Boy Scouts of America* v. *New Hartford,* 121 Conn. 466, 468, 185 A. 575 (1936). It is the nature of the use, and not the frequency of use and the number of students, which is controlling. Of course, the property in question must actually be used in order to qualify for an exemption. If Red Top had not been used, or if the use had been abandoned prior to the years in question, the property would not be eligible for tax exemption. *Klein* v. *Bridgeport,* 125 Conn. 129, 131-32, 3 A.2d 675 (1939); see also *Arnold College* v. *Milford,* supra, 211.

From the facts found by the trial court, Red Top was, in fact, *used* during the years 1975 to 1977, albeit for a relatively few number of days and by a relatively few number of Harvard students. It was not used as a social resort by a privileged few; the trial court found that the Harvard-Yale race is the focus of the entire rowing program at Harvard. Red Top was used by the students during the

tion was using a facility or equipment, or whether there was a sufficient number of hours of student use of the property. Such a formula, which would necessitate a detailed inquiry by the taxing authorities and the courts, and which would engender uncertainty as the annual enrollments and usage of facilities fluctuated, is not imposed by § 12-81 (7); under this statute, the inquiry regarding use is limited to whether the property in question is used exclusively for one or more of the statutorily enumerated purposes.

school year exclusively for activities which, from the facts found by the trial court, we deem educational in nature. The case before us is thus readily distinguishable from cases such as *St. Bridget Convent Corporation* v. *Milford,* 87 Conn. 474, 88 A. 881 (1913) (land used for vegetable garden to produce food for teachers and pupils not tax exempt); and *New Canaan Country School, Inc.* v. *New Canaan,* 138 Conn. 347, 84 A.2d 691 (1951) (houses owned by plaintiff school used solely for living quarters of some of its teachers not tax exempt). See also *Manresa Institute* v. *Norwalk,* 61 Conn. 228, 231–32, 23 A. 1088 (1891) (property used as a villa or country house for professors of three colleges during vacation not tax exempt).

In conclusion, the purposes for which a corporation is organized are found in its charter; whether the property for which an exemption is claimed is used exclusively for one of the required purposes must be determined from the facts. *Camp Isabella Freedman of Connecticut, Inc.* v. *Canaan,* 147 Conn. 510, 514, 162 A.2d 700 (1960). The conclusion in each case is " 'necessarily governed by the specific facts in the individual case.' " *New Canaan Country School, Inc.* v. *New Canaan,* supra, 349. The trial court should have concluded that the plaintiff is entitled to an exemption from taxation under § 12-81 (7).

There is error, the judgment is set aside and the case is remanded with direction to sustain the plaintiff's appeal and to order the board of tax review to strike the plaintiff's property from the tax list.

In this opinion the other judges concurred.