## JUNIOR COLLEGE OF COMMERCE
### vs.
## THE CITY OF NEW HAVEN

Superior Court     New Haven County     File #49129

Present: Hon. ARTHUR F. ELLS, Judge.

Alexander Winnick,       Attorney for the Plaintiff.

David S. Rivkin,
  Corporation Counsel,     Attorney for the Defendant.

**MEMORANDUM FILED JUNE 10, 1936.**

ELLS, J. The question involved in this case is whether the property of the Junior College of Commerce located at the corner of Whitney Avenue and Cottage Street in New Haven is exempt from taxation as being "the real property of a Connecticut corporation organized exclusively for . . . . educational purposes and used exclusively for carrying out" such purpose. The property does belong to the corporation— in a sense. The purchase price was $32,000. and a mortgage was given back to the seller for $32,000. Possibly there was in this arrangement the thought that a sale rather than a lease would save taxes. But there was a sale and the case must be decided on that basis. It is contended that the second requirement is also satisfied; that it is organized exclusively for educational purposes.

Our Supreme Court has said that the underlying theory upon which tax exemptions have always been based is a purpose to serve the interests of the general public and a sequestration of the property to the use of the public. The public aspect of "public education" is defined as "the performance by private persons of functions which would other-

wise devolve upon the State or municipal government." This idea is stated in a slightly different manner in another case— "Does it discharge educational functions which would otherwise rest upon municipal or other governmental agencies?" If this is a controlling test, the Junior College of Commerce clearly fails to meet it.

Another element of the public nature and character test has always been the requirement that the institution be so set up and organized that no individual may derive any profit therefrom, except reasonable compensation for services rendered. This is now specifically stated in our statute.

Dean Tator is obviously the moving spirit in the institution. He has become progressively so. Associated in its organization were a number of young men of vision who gave much intelligent thought and aid to its management. Many of them have now withdrawn, and from their testimony, given in behalf of the City, strength is supplied to the defendant City's claim that this is now a private institution masquerading as a public one, and that profits have gone to the Dean in excess of reasonable compensation for services rendered. While Mr. Tator was giving practically his whole time to a lucrative government position there was a credit entered on the books to Mrs. S. W. Tator, et al, in the amount of $4000., and in general the set up of the books leads to the suspicion that there will be no "profits" left over, to go, under the amended Articles of Association, to the City or to the State. This criticism is directed only at the tax exemption claim. Mr. Tator has put a tremendous amount of energy into his work, and is entitled to profits,—but this serves only to strengthen the idea that the school does not satisfy the test as to its public character.

Another provision of the exemption statute has to do with exclusive use. The auditorium of this school has been freely rented to private individuals for hire. This use has been incidental and not primary and I would hesitate to deny exemption for this private renting alone.

Upon its organization, this corporation, in order to provide working capital, sold five year contingent income bonds containing a provision making the holder a residuary owner in case of a dissolution of the corporation. It became apparent that this would destroy any chance of tax exemption, and the Articles of Association were amended and the City of New

Haven and the State of Connecticut made owners in case of dissolution, and it was provided that these governmental agencies were to receive all excess profits. All this was done to meet the requirements laid down by our Supreme Court. Unfortunately there are a few of the original bonds outstanding, and it is difficult to see how the later amendments, made without the consent of the holder, could impair or change the original stated obligation. The total amount outstanding is small and again I would hesitate to deny exemption on this ground alone.

I prefer to rest my decision on the broad ground that the evidence convinces me this is not the kind of public educational institution contemplated by the statute. The conclusion is almost inescapable that this College, however excellent it may be, is largely a school of accounting conducted for private profit, bearing considerable resemblance to high grade private business colleges, and that it does not exercise the "Public Educational" function defined in the statute and interpreted by the Supreme Court. "The situation presented is not in accord with the contemplation of public education and public benefit which is at the root of the exemption claimed."

I do not overlook the fact that the latter part of the opinion in the late case of **Jewish Center, Inc. vs. Stamford, 117 Conn. 379, 387,** can be so read as to cast doubt on my conclusion. But that statement rests in part on the supposition that "There is no probability of personal pecuniary profit to its officers or members". Here, such profit seems an actual fact. And, although it seems to read that way, I cannot quite believe the court means that the whole or sole test is the purported sequestration of property, carrying surplus income, and assets in the event of dissolution, to State or City. If so, as here, anybody could buy a valuable piece of property without cost, by giving back a mortgage for the purchase price, deprive the City of a large sum in taxes, and conduct a private school for profit, merely being sure to show no surplus profits on its balance sheet,—and not be especially worried if upon dissolution the equity of zero dollars went to the State. In other words, are the dedicatory phrases in the Articles of Association determinative and final, or is the case to be governed by the situation actually existing on the taxing date. Reason and common sense indicate the latter.

The appeal is dismissed.